(No. 49914

THORNTON, LTD., Appellant, v. EDWARD J. ROSE-WELL, County Treasurer, *et al.*, Appellees.

*Opinion filed September 19, 1978.*

Hoffman & Davis and Stanford D. Marks, of Chicago (Sol A. Hoffman, Edward J. Hladis, and John L. Leonard, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., Deputy State's Attorney, and Dorothy Kirie Kinnaird, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff, Thornton, Ltd., an Illinois corporation,

brought this action in the circuit court of Cook County seeking a writ of *mandamus* compelling the defendants, Edward J. Rosewell, Cook County treasurer and *ex officio* collector, and Stanley T. Kusper, Cook County clerk, to issue a certificate of purchase to real estate on which plaintiff was a successful bidder at a tax sale conducted under the Revenue Act of 1939. (See Ill. Rev. Stat. 1975, ch. 120, pars. 705 through 733.) The circuit court entered summary judgment for defendants, and the appellate court affirmed (51 Ill. App. 3d 373). We granted plaintiff leave to appeal and we now affirm.

The pleadings of the parties indicate no dispute concerning the facts. Certain Cook County real estate was offered for sale pursuant to a judgment order entered on delinquent taxes for the year 1974. Prior to making a bid on the real estate plaintiff inspected the tax judgment, sale, redemption and forfeiture record (the record) prepared by the defendant collector and kept in the office of the defendant county clerk pursuant to law (Ill. Rev. Stat. 1975, ch. 120, par. 713). The record includes a list of delinquent lands and the taxes, interest and costs due on those lands. All charges against the real estate for the year 1972 were stamped "paid." There was no entry for the year 1973, indicating that the taxes for that year were also paid. Thus, according to the record, only the 1974 taxes were delinquent. Relying on the accuracy of the record, plaintiff submitted a bid that was accepted by the defendants. Plaintiff then paid the collector the amount due under the bid—$15,065.96, representing the taxes, interest and costs owing on the property as advertised by the collector. Under section 247 of the Revenue Act (Ill. Rev. Stat. 1975, ch. 120, par. 728), plaintiff then applied to the county clerk for a statement of taxes, interest and costs which remained unpaid but were not included in the advertisement, expecting the statement to confirm plaintiff's prior examination of the record. The clerk's state-

ment indicated that the record was in error and that the collector's warrant book revealed that over $36,000 in taxes, interest and costs for the years 1972 and 1973 were still unpaid. Because of these outstanding charges the collector refused to issue a receipt to plaintiff showing all taxes paid and the clerk refused to issue plaintiff a certificate of purchase. Plaintiff subsequently brought this action seeking an order directing defendants to so mark the record as to show the 1972 and 1973 taxes paid as to plaintiff or its successors, and a writ of *mandamus* directing the defendants to issue to him a certificate of purchase on the real estate in question.

In its appeal to this court, plaintiff relies upon *Jackson Park Hospital Co. v. Courtney* (1936), 364 Ill. 497, which it regards as dispositive. In that case, plaintiff's predecessor in title purchased certain real estate in 1933. Before making the purchase, plaintiff's predecessor caused an examination to be made of the tax records, including the collector's warrants in the offices of the county clerk and county collector. The warrant contained an endorsement, apparently by the county clerk, showing the taxes extended in error and that the property should be exempt. An entry in the tax judgment, sale, redemption and forfeiture record indicated that the taxes for the year 1927 had been paid. In reliance on these entries, plaintiff's predecessor purchased the property and later conveyed it to the plaintiff. Upon being informed that the taxes for 1927 were, in fact, unpaid, and proceedings to collect thoses taxes were about to be instituted, plaintiff sought an order enjoining the county officials from attempting to enforce collection. This court held that the relief requested by plaintiff should be granted, stating:

"[The county clerk] has power to cause his records to show a tax paid. He is a public officer and is presumed to perform his duty. His records must always speak the truth. When the clerk

stamped as paid the taxes against the property now owned by appellant, in the tax judgment sale, redemption and forfeiture record, they became paid so far as third persons were concerned. He is conclusively presumed to have complied with the law and not to have made the entry unless the taxes were actually paid, and when those records were examined on behalf of appellant's grantor and showed the taxes against this property paid, he was justified in relying upon the record." (364 Ill. 497, 501.)

Although admitting that its status as a successful bidder at a tax sale is not precisely the same as that of the fee owner in *Jackson Park Hospital*, plaintiff contends that this distinction is irrelevant since the broad language in that opinion extends protection to all "third persons," *i.e.*, those other than the owners of the property at the time of default. In addition, plaintiff contends that the public policy of this State is to encourage, rather than discourage, participation in tax sales in order to increase collection of tax revenue, and that a holding adverse to plaintiff would defeat that policy.

In our opinion, the considerations urged by plaintiff do not warrant the application of the rule pronounced in *Jackson Park Hospital* in the factual context of this case. Not only is plaintiff's status significantly different from that of the fee owner in *Jackson Park Hospital*, but the extent of the record search made prior to bidding appears to be substantially less here than there. In *Jackson Park Hospital* plaintiff's predecessor in title had examined the collector's warrant, which appeared to have been endorsed by the county clerk in a manner compatible with the "paid" notation in the tax judgment, sale, redemption and forfeiture record. Here an examination of the warrant books, which would have revealed the unpaid status of the 1972 and 1973 taxes, was not made. While plaintiff urges

in explanation that the large number of parcels of real estate being offered for sale precludes examination of the warrant books, the fact remains that had plaintiff here conducted as extensive an examination as in *Jackson Park Hospital* he would have discovered the error prior to bidding. This fact becomes relevant only in a balancing of the equities between the taxing units and the tax purchaser in a tax-sale case such as this.

There are, however, more substantial differences between *Jackson Park Hospital* and the case before us in that the statutory scheme at the time of this sale was substantially different. The two-step tax-sale procedure provided by section 247 of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 728) had not been adopted when the transactions in *Jackson Park* took place. Section 247 provides in part:

> "The person purchasing [at a tax sale] any tract or lot, or any part thereof, shall forthwith pay to the collector the amount charged on such tract or lot ***; and in no case shall the sale be closed until payment is made, or the tract or lot again offered for sale. Provided, in counties having a population of 1,000,000 or more, as shown by the last United States census, only the taxes, special assessments, interest and costs as advertised in the sale shall be required to be paid forthwith in cash. The general taxes charged on the land remaining due and unpaid, not included in the advertisement, shall be paid by the purchaser within 10 days after the sale, provided, that upon payment of the fee provided by law to the County Clerk (which fee shall be deemed part of the costs of sale) the purchaser may make written application within such period of 10 days to the county clerk for a statement of all such taxes, interest and costs and an estimate of the cost of redemption of all forfeited general taxes, as are not included in the advertisement and after obtaining such statement and estimate and an order on the county collector to receive the amount of forfeited general taxes, if any, the purchaser shall pay to the county collector all such remaining taxes, interest and

costs, and the amount necessary to redeem the forfeited general taxes, who shall issue the purchaser a receipt therefor. *** If a purchaser fails to complete his purchase as herein provided, the purchase shall become void, and be of no effect, but the collector shall not refund the amount paid in cash at the time of the sale, except in cases of sale in error. *** The lien for taxes for such amount, however, shall remain on the land, in favor of the purchaser, his heirs or assigns, until paid with 5% interest on such amount from the date the purchaser paid it ***."

Under the statute as it now reads, a successful bidder must make two payments in order to complete the sale. (*Hoffmann v. Stuckslager* (1971), 48 Ill. 2d 262, 267.) At the time the sale is held and the bid is accepted, he need pay only the taxes, interest and costs as advertised. Thereafter, he must pay all amounts due on the delinquent lands which were not included in the advertisement, and those may be substantially larger. Here, the error in the record was discovered before the second payment was due and thus prior to the completion of the sale. As to this property, plaintiff was not yet the owner of the fee (see *Schwartz v. City of Chicago* (1974), 21 Ill. App. 3d 84, 95), nor even a certificate holder, but only a bidder in the process of making a purchase. Where a clerical omission concerning the amount due is discovered during the pendency of a tax sale, a prospective purchaser may not use that error to prevent collection of tax revenue to which the government is entitled. (See *Austin Liquor Mart, Inc. v. Department of Revenue* (1972), 51 Ill. 2d 1; *Mr. Car Wash, Inc. v. Department of Revenue* (1975), 27 Ill. App. 3d 931.) It is firmly established public policy that an official's negligence or mistake in performing his statutory duties shall not deprive a taxing body of public revenues. *People ex rel. Scott v. Chicago Thoroughbred Enterprises, Inc.* (1973), 56 Ill. 2d 210, 220; *Skillet Fork River Outlet Union Drainage District v. Central Lumber Co.* (1964), 31 Ill. 2d 312, 316.

Plaintiff urges that the remedy here lies in actions upon the official bonds of the treasurer and collector for the amount of the unpaid taxes, rather than "penalizing" plaintiff. But those actions exist only if the holding of *Jackson Park Hospital* is controlling here. Since we hold it is not, there is no occasion to consider the question of actions upon the official bonds. Nor is it a necessary consequence, in our judgment, that plaintiff suffer a substantial loss. Cook County is the seller of the property and, if not precluded by the statute, is in a position to refund to plaintiff the amounts paid to it in reliance on the record. That action will place plaintiff in substantially the same position it was in prior to making the payment. It eliminates any significant prejudice to plaintiff, and the governmental taxing units are not denied revenue to which they are entitled.

The trial court suggested such a solution but plaintiff rejected the offer, contending that the court had no power to enter such an order because section 247 of the Revenue Act (Ill. Rev. Stat. 1975, ch. 120, par. 728) prohibits the refund of previously paid taxes "except in cases of sale in error." Plaintiff notes that section 260 of the Act (Ill. Rev. Stat. 1975, ch. 120, par. 741) sets forth certain instances when the county clerk shall declare a sale to be "in error" (see *La Salle National Bank v. Hoffman* (1971), 1 Ill. App. 3d 470), and that none of those situations are presented here. It urges that those grounds are exclusive, so that the clerk cannot be required to provide a refund under any other circumstances. Since a refund is not an available remedy, plaintiff argues, the trial court, in order to do equity to the innocent tax-sale bidder, must order the defendants to consider the unpaid taxes as being paid and to deliver the certificate of purchase.

We disagree with plaintiff's construction of these sections. Section 260 does not define a "sale in error"; it simply lists those circumstances under which the clerk

shall declare a sale to be in error, refund the amount paid, and cancel the certificate of purchase which has been issued. Those circumstances are not declared to be exclusive, and the section, by its own terms, does not contemplate a situation such as that here presented. Section 247, on the other hand, permits a refund where a sale is made "in error" and a successful bidder has advanced funds under the special two-payment procedure; it does not limit or define a "sale in error" for the purpose of that section. In our opinion, section 247 authorizes a refund here. Certainly it contains nothing which would preclude such relief under the equitable powers of the court. This court held long ago that equity has jurisdiction to correct the mistake of a county ministerial officer. (*Foster v. Clark* (1875), 79 Ill. 225.) Having that jurisdiction, the court may award a refund in order to do complete equity to all parties involved. In our judgment a refund can and should be ordered here not only to prevent unfairness to this plaintiff, but to further public policy. "[P] rotection of the rights of purchasers of real estate sold for delinquent and forfeited general taxes is in the public interest." (*City of Chicago v. City Realty Exchange, Inc.* (1970), 127 Ill. App. 2d 185, 190.) "Equity courts may, and often do, go much further in giving *** relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." *County of Du Page v. Henderson* (1949), 402 Ill. 179, 192.

We agree with plaintiff that the policy of this State is to encourage bidders to participate in tax sales in order to assure effective collection of revenue, and we do not regard this decision as thwarting that policy. The availability of a refund in those few cases where such errors are made is, we believe, sufficient protection for the tax-sale bidder.

The ruling of *Jackson Park Hospital* on the particular facts there presented was proper. Its broad language,

however, is not applicable here to a differing set of facts—an uncompleted two-step tax sale governed by statute. See *Forman Realty Corp. v. Brenza* (1957), 11 Ill. 2d 531.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*