LYNN EVANS, Plaintiff, *v.* RICHARD STOVAL, M.D., *et al.*, Defendants.—
(RICHARD STOVAL, M.D., Petitioner-Appellee, *v.* FRANK J. MACKEY, JR.,
Respondent-Appellant.)

Third District No. 79-790

Opinion filed April 29, 1980.

Sidney Z. Karasik, of Chicago, for appellant.

J. Scott Swaim, of Swaim & Swaim, of Kankakee, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

On February 26, 1975, plaintiff Lynn Evans, by his attorney Frank J. Mackey, Jr., filed a complaint against Dr. Richard Stoval and certain others. Insofar as it is relevant, the complaint alleged that on March 1, 1973, Dr. Stoval "[c]arelessly and negligently performed back surgery" on Evans, that he "[c]arelessly and negligently failed to order proper laboratory workups and diagnostic procedures to determine the presence of infection in the operative site," and that he "[c]arelessly and negligently misinformed [Evans] as to the cause of the drainage" from the site. As a result Evans was alleged to have developed an infection which required further surgery and permanently disabled him. Dr. Stoval filed an answer denying all allegations of negligence, and on October 5, 1976, he served Mackey with notice of his motion for summary judgment. Attached to the motion were affidavits of Dr. Stoval and Dr. Stuart Levin, as well as numerous hospital and medical records. Plaintiff did not file counter-affidavits or any other response and failed to appear at the hearing on the motion. Summary judgment was entered in favor of Dr. Stoval on October 28, 1976.

On November 24, 1976, Dr. Stoval filed a "petition for fees and expenses" pursuant to section 41 of the Civil Practice Act (Ill. Rev. Stat.

1975, ch. 110, par. 41), charging that the allegations of negligence in Evans' complaint were untrue and made without reasonable cause and not in good faith. The petition sought to recover expenses from both Evans and his attorney, Mackey.

At the hearing on the petition Dr. Stoval testified that on March 1, 1973, he performed a lumbar laminectomy and spinal fusion on Evans, that on May 10, 1973, Evans was doing very well with no drainage from the operative site, but on May 15, 1973, dark bloody drainage was noted which persisted until Evans' final consultation with Dr. Stoval. Two cultures were done of the drainage material, one on May 29, 1973, and the other on August 24, 1973, which indicated no infection.

Dr. Stoval stated that he did not receive an authorization from Evans to release medical records to Mackey and that his deposition was never taken. He said he incurred attorney's fees of $1,231 in defending the lawsuit and $1,769 in prosecuting the section 41 petition. The affidavit of Dr. Levin and the copies of hospital records attached to the motion for summary judgment cost him $291.75. He spent 10 hours preparing his defense.

Dr. Levin, a medical expert whose affidavit accompanied the motion for summary judgment, testified that on the basis of his review of Dr. Stoval's records, he would have treated Evans the same way, and it was quite possible that the infection developed after Evans' last consultation with Dr. Stoval.

Lynn Evans testified that in the summer of 1973 Dr. Stoval told him the drainage might be caused by "a bad case of cat gut," which might clear up. He last saw Dr. Stoval on December 11, 1973, at which time Dr. Stoval told him to return if the problem had not cleared up in 3 months. Evans said that in the latter part of March 1974 the drainage began to have an odor, and that he did not return to Dr. Stoval, but rather went to a V.A. Hospital in Marion, Illinois, where doctors determined he had an infection. In July of 1974, Evans went to the John Cochran Hospital in St. Louis, Missouri, where he was informed his condition was osteomyleitis, and surgery was performed which corrected the problem.

Evans said he met Mackey in late 1974 and gave him a complete history of his problems since the surgery performed by Dr. Stoval. At a second meeting Evans asked Mackey to represent him in his suit against Dr. Stoval.

Mackey testified that he believed he had all of the information from the hospitals in Marion and St. Louis in addition to the information related to him by Evans before filing the suit. At one point he said that Evans brought him some records from those hospitals, although at another time he said he might have got them from the hospitals. Evans testified he did not see the records but signed a release for them. Mackey admitted that

he requested copies of the same hospital records over 5 months after suit was filed, saying that the others might have been mislaid or lost. Mackey stated he also consulted with Dr. Leonard Arnold prior to filing the complaint. From his conversations with Arnold and Evans, Mackey concluded that Dr. Stoval had been negligent in the manner alleged in the complaint. Although Dr. Arnold had initially expressed a willingness to testify, he later changed his mind. Mackey stated that he had practiced law for 25 years and had handled many medical malpractice cases.

The trial court found in favor of Dr. Stoval as against Mackey only, stating,

> "It would seem Mr. Mackey was more of a plaintiff than Mr. Evans in this case * * *. The Court cannot award the Petitioner anything against Mr. Evans because he was apparently misled and misused by Mr. Mackey almost as badly as was Dr. Stoval."

Dr. Stoval was awarded $3,000 as attorney's fees, $3,500 for the 10 hours he spent preparing his defense, and $291.75 for Dr. Levin's affidavit and the copies of hospital records.

On appeal respondent Mackey raises several issues, but we need consider only one. At the time Evans' complaint was filed, section 41 provided:

> "Allegations and denials, made without reasonable cause and not in good faith, and found to be untrue, shall subject *the party* pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court at the trial." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 110, par. 41.)

Mackey contends that he was not "the party pleading" the allegations of negligence, and that, therefore, he is not subject to the payment of Dr. Stoval's expenses under section 41. We agree.

As stated in *Adams v. Silfen* (1951), 342 Ill. App. 415, 419-20, 96 N.E.2d 628, a case reversing an award of expenses under section 41:

> "At common law costs were not recoverable. Therefore costs can now be imposed and recovered only where authorized by statute. Statutes which authorize the taxation of costs are penal in their nature, and *unless authority to tax them is clearly granted by statute, their allowance cannot be sustained.*" (Emphasis added.)

This principle of strict construction has become an important judicial gloss on section 41. See *Voss v. Lakefront Realty Corp.* (1977), 48 Ill. App. 3d 56, 72, 365 N.E.2d 347, 359; *Farwell Construction Co. v. Ticktin* (1978), 59 Ill. App. 3d 954, 960, 376 N.E.2d 621, 626.

Applying this principle of strict construction, we think the term "party" should not include an attorney for a party. As stated in 59 Am. Jur. 2d *Parties* §7 (1971):

"In connection with judicial proceedings the term 'parties' is a technical word which has a precise meaning in legal parlance. It designates the opposing litigants in a judicial proceeding—the persons seeking to establish a right and those upon whom it is sought to impose a corresponding duty or liability * * *."

Furthermore, section 41 itself refers to "a reasonable attorney's fee" as an expense "incurred by the other party," effectively distinguishing between a party and his attorney.

Also supporting our view is the "overriding public policy of Illinois that potential suitors * * * have free and unfettered access to the courts." (*Berlin v. Nathan* (1978), 64 Ill. App. 3d 940, 951, 381 N.E.2d 1367, 1375, *cert. denied* (1979), ___ U.S. ___, 62 L. Ed. 2d 36, 100 S. Ct. 53.) *Berlin* involved an action in tort brought by a physician against a patient and her attorneys seeking recovery in tort for the allegedly wilful and wanton filing of a frivolous medical malpractice lawsuit. In refusing to permit recovery in the absence of proof of all of the elements of malicious prosecution, the court stressed the importance of that public policy, and quoted from *Lyddon v. Shaw* (1978), 56 Ill. App. 3d 815, 372 N.E.2d 685, 690, as follows:

" 'These considerations apply with equal force, not only to a party litigant, but to his counsel (see *Spencer v. Burglass* (1976), La. App., 337 S.2d 596), since a litigant's free access to the courts would frequently be of little value to him if he were denied counsel of his choice by a rule which rendered attorneys fearful of being held liable as insurers of the merits of their client's case, and therefore unwilling to undertake representation in close or difficult matters.' " (64 Ill. App. 3d 940, 952, 381 N.E.2d 1367, 1375-76.)

A consideration of this public policy indicates that liability should not be imposed on a party's attorney for the other party's litigation expenses in the absence of clear statutory authorization.

For the reasons stated above, the judgment of the Circuit Court of Kankakee County in connection with Dr. Stoval's section 41 petition is reversed.

Reversed.

ALLOY, P. J., and SCOTT, J., concur.