WEST SUBURBAN HOSPITAL MEDICAL CENTER, Plaintiff-Appellee, v. THOMAS C. HYNES, Assessor of Cook County, *et al.*, Defendants-Appellees (Phoenix Bond and Indemnity Company, Defendant-Appellant).

First District (4th Division)   No. 88—0463

Opinion filed August 18, 1988.

Stanford D. Marks and Lupel & Bunn, both of Chicago (Warren Lupel, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and Mark R. Davis, Assistant State's Attorneys, of counsel), for appellees Thomas C. Hynes, Edward J. Rosewell, John J. Gallagher, and Stanley J. Kusper, Jr.

O'Keefe, Ashenden, Lyons & Ward and Winston & Strawn, both of Chicago (Kevin M. O'Keefe, Elizabeth L. Gracie, Richard J. Brennan, and Gay R. Schreiber, of counsel), for appellee West Suburban Hospital Medical Center.

JUSTICE LINN delivered the opinion of the court:

Defendant, the Phoenix Bond and Indemnity Company, Inc., purchased the alleged delinquent property taxes of plaintiff, the West Suburban Hospital Medical Center, at the 1985 county tax sale. The hospital thereafter redeemed its property. The day after its redemption, the hospital brought this action in the circuit court of Cook County. The hospital named as defendants Phoenix Bond; Thomas Hynes, the Cook County assessor; Edward Rosewell, the county treasurer and *ex officio* collector; John Gallagher, the county auditor; and Stanley Kusper, the county clerk. The hospital sought a declaration that the taxes were improperly imposed and an injunction preventing

the taxing officials from paying the redemption money to Phoenix Bond.

The trial court issued a temporary restraining order (TRO) preventing Phoenix Bond from receiving the redemption money. Phoenix Bond now brings this interlocutory appeal pursuant to Supreme Court Rule 307(a)(1). (107 Ill. 2d R. 307(a)(1); *Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177, 303 N.E.2d 1.) Phoenix Bond contends that the trial court lacked jurisdiction over the matter because: (1) the Revenue Act of 1939 (Ill. Rev. Stat. 1985, ch. 120, par. 719 *et seq.*) provided the hospital with an adequate remedy at law and (2) the hospital's redemption of its property rendered the cause moot.

We affirm the order of the trial court and remand.

BACKGROUND

A

A brief review of the tax sale process is necessary to better understand the facts in the case at bar. The Revenue Act of 1939 directs the taxing officials to hold an annual tax sale, in which tax delinquent property is auctioned to satisfy the taxes. (Ill. Rev. Stat. 1985, ch. 120, pars. 719, 724.) A successful bidder—a tax purchaser—must then pay all of the taxes owed on the property for that year and for all prior years. Only after the tax purchaser pays all of the taxes on the property do the taxing officials issue to the tax purchaser a certificate of purchase. A tax purchase extinguishes the county's tax lien on the property. Ill. Rev. Stat. 1985, ch. 120, par. 728.

The certificate of purchase entitles the tax purchaser to the amount that he paid with interest ranging from 12% to 18%. The interest is a penalty to the delinquent landowner that accumulates every six months. (Ill. Rev. Stat. 1985, ch. 120, par. 734.) If the landowner does not redeem the property within two years, the tax purchaser may then petition the trial court for a tax deed on the property, thus becoming its legal owner. Ill. Rev. Stat. 1985, ch. 120, par. 747.

As noted above, Illinois gives the delinquent landowner the right of redemption. The landowner may redeem his or her property by paying to the taxing officials the total amount of the unpaid taxes with the penalty interest. At the end of that six-month period, the taxing officials then pay to the tax purchaser the amount of the principal and interest stated on the certificate of purchase. Ill. Rev. Stat. 1985, ch. 120, par. 734.

B

In the case at bar, the hospital owns and operates a building known as the Ambulatory Care Center/Professional Office Building. From the time of its opening in 1982, the hospital used part of the building and leased the remaining space to private physicians on its medical staff.

The property was classified as tax-exempt in the years 1982, 1983, and 1984. However, on June 7, 1984, the assessor notified the hospital that he would return the property to the tax roll in 1985. In 1986, the hospital petitioned for an exemption of that portion of the property which it used in and after 1985. The Department of Revenue ruled that 61.5% of the property was exempt from property taxes.

The question of the property taxes for the years 1982, 1983, and 1984, however, remained. The record shows that the hospital received bills for these back taxes in August 1986. In response to the hospital's request, the assessor executed a certificate of error for each of the three years, each certificate showing a lowered property tax. Further, the record contains a "Notice To Certificate of Error Recipients." This document stated that the "issuance of a Certificate of Error in advance of the annual tax sale operates as an objection to the sale and will protect the property at the annual tax sale."

The hospital paid the recalculated taxes on August 9, 1986. The hospital alleged that it additionally contacted the collector's office. That office told the hospital that the certificates of error had been posted to the collector's warrant books. This action operated as an objection to the tax sale, thereby excluding the property from the tax sale.

On December 29, 1986, despite all of the aforementioned actions taken and assurances given, the taxing officials offered for sale $631,895.58 in allegedly delinquent property taxes plus $38,953.98 in statutory interest and costs, totalling $670,849.56. Phoenix Bond paid the taxes and charges.

The hospital alleged that it again advised the collector of the certificates of error. The collector allegedly assured the hospital that he had accepted no money from Phoenix Bond and had issued to it no certificate of purchase. The collector promised that the tax sale had not been, and would not be, consummated because the property should never have been offered for sale.

Again, despite the above assurances, the collector issued a certificate of purchase to Phoenix Bond sometime after the tax sale. On May 19, 1987, Phoenix Bond notified the hospital, through the county clerk, that it would seek a tax deed if the hospital did not redeem the

property.

The hospital alleged that it informed the collector's office of the issuance of the certificate of purchase to Phoenix Bond. The record shows that on September 25, 1987, the collector, represented by the State's Attorney, filed in the trial court a motion to set aside the tax sale. In the motion, the collector explained that the hospital's taxes were auctioned due to a clerical error. The collector sought a declaration that the tax sale was null and void. The collector also sought an order: (1) allowing him to enter the tax sale's cancellation in his warrant books; (2) directing Phoenix Bond to surrender the certificate of purchase; and (3) upon the certificate's cancellation, directing him to refund the money that Phoenix Bond paid. Phoenix Bond filed a response on November 16, 1987, in which it contended that the tax sale was proper.

The hospital further alleged that in December 1987, it held discussions with Phoenix Bond through its principal officer and attorney. Phoenix Bond took the following positions: the tax purchase was valid, the hospital had no standing in the collector's vacatur of tax sale proceeding, and it would appeal any adverse ruling in that proceeding.

The hospital drew two conclusions from Phoenix Bond's positions. First, because of Phoenix Bond's promise to appeal an adverse ruling in the vacatur of tax sale proceeding, no final order on the tax sale's legality would issue before December 29, 1988, the expiration of the hospital's redemption period. Second, December 29, 1987, would mark the beginning of another six-month penalty period, increasing the interest rate from 36% to 54%. Based on the total taxes and charges sold at the sale, $670,849.56, the penalty interest would increase after December 29, 1987, from $241,505.84 (36%) to $362,258.76 (54%).

Based on these conclusions, on December 28, 1987, the hospital paid the taxing officials $912,362.40, which was their estimate of the cost of redemption. The next day, December 29, 1987, the hospital brought the present action. The hospital sought a declaration that the taxes were improperly calculated and imposed, and also that the tax sale was null and void. The hospital further sought an injunction preventing the taxing officials from paying the redemption money to Phoenix Bond.

The trial court held a hearing that day, in which the hospital, the taxing officials represented by the State's Attorney, and Phoenix Bond were all present. At the close of the hearing, the trial court issued a TRO preventing Phoenix Bond from receiving the redemption money and also preventing it from transferring or encumbering the

certificate of purchase. The TRO also applied to any other assignee or holder of the certificate of purchase. Denying Phoenix Bond's request, the trial court did not require the hospital to post a bond. The court reasoned that the hospital already paid money into the court, *i.e.*, the redemption money, which the taxing officials were holding until the matter was adjudicated. Phoenix Bond appeals from the issuance of the TRO.

OPINION

## I

■ Phoenix Bond claims that the trial court lacked jurisdiction over the cause and, consequently, the TRO was null and void. Phoenix Bond invokes the general rule that a court will not take jurisdiction to grant equitable relief where there exists an adequate remedy at law. (7 Ill. L. & Prac. *Chancery* §31 (1954).) Phoenix Bond argues that the hospital had two adequate remedies at law: the statutory remedies that the Revenue Act provides and the vacatur of tax sale proceeding brought by the collector. We conclude, for two reasons, that the trial court properly assumed jurisdiction over the cause to grant equitable relief.

## A

■ The general rule that equitable relief is unavailable where an adequate remedy at law exists applies to the field of taxation. (*Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 105, 306 N.E.2d 299, 301.) However, there are two exceptions to this rule. Where a tax is unauthorized by law, or where it is levied upon property exempt from taxation, a taxpayer need not look to the remedy at law, but may seek injunctive relief. These two exceptions constitute independent grounds for equitable relief. In such cases, the remedy at law is not exclusive; it is not necessary that the remedy at law be inadequate. Rather, the two remedies, the legal remedy and the remedy of injunction, are cumulative and the taxpayer may elect to pursue either one. 56 Ill. 2d at 105, 306 N.E.2d at 301; *Owens-Illinois Glass Co. v. McKibbin* (1943), 395 Ill. 245, 252-56, 52 N.E.2d 177, 181-82.

■ The hospital's claims clearly fall within both exceptions, justifying the trial court's exercise of independent equitable jurisdiction. The hospital alleged that the back taxes were unauthorized by law. Therefore, the property is eligible for its original total exemption for the years 1982 through 1984. This allegation falls within the first exception. The hospital alleged alternatively that the property was enti-

tled to the 61.5% exemption which it received for 1985 and subsequent years. The back taxes were thus levied on that portion of the property which was allegedly tax-exempt. This allegation falls within the second exception.

Phoenix Bond contends that these principles apply only to the payment of a tax and do not apply to the redemption of real estate from a tax sale. We disagree. Our courts have exercised independent equitable jurisdiction in cases involving the payment of property back taxes erroneously assessed and sold at a tax sale. (See, *e.g.*, *Chicago Gravel Co. v. Rosewell* (1983), 118 Ill. App. 3d 535, 455 N.E.2d 120, *aff'd* (1984), 103 Ill. 2d 433, 469 N.E.2d 1098.) The trial court properly exercised its independent equitable jurisdiction.

### B

We reach our conclusion that the trial court properly assumed jurisdiction over the cause to grant equitable relief for a second and equally controlling reason. The taxing officials, represented by the State's Attorney, agree with the hospital that they *mistakenly* auctioned the hospital's taxes. The taxing officials admit that the sale of the hospital's taxes was based on their clerical error.

■ The rule is well settled that equity has jurisdiction to correct the mistake of a county ministerial officer. (*Thornton, Ltd. v. Rosewell* (1978), 72 Ill. 2d 399, 407, 381 N.E.2d 249, 253, citing *Foster v. Clark* (1875), 79 Ill. 225.) Also, equity courts often go much further in giving relief in support of the public interest than they customarily go when only private interests are involved. (*Thornton, Ltd.*, 72 Ill. 2d at 407, 381 N.E.2d at 253, quoting *County of Du Page v. Henderson* (1949), 402 Ill. 179, 192, 83 N.E.2d 720, 728.) Although it is in the public interest to protect the rights of tax purchasers (*City of Chicago v. City Realty Exchange, Inc.* (1970), 127 Ill. App. 2d 185, 189-90, 262 N.E.2d 230, 232), it is also in the public interest to place property in the hands of those who are both willing and able to pay their taxes. *Garcia v. Rosewell* (1976), 43 Ill. App. 3d 512, 515-16, 357 N.E.2d 559, 562.

■ Applying these principles to the instant case, it is clear that the trial court had jurisdiction to intervene. The hospital has already paid the back taxes, as recalculated in the certificates of error. The taxing officials, represented by the State's Attorney, admit that they never should have auctioned the hospital's taxes. They admit that they did so by mistake. Consequently, Phoenix Bond never should have bought the taxes.

"Can it be possible that such an obvious and injurious mistake as

this ought not to be corrected? The correction is required by the most obvious justice. The defendants [the taxing officials and Phoenix Bond], in equity and good conscience, are bound to abstain from availing themselves of that mistake, to the prejudice of [the hospital]." (*Foster v. Clark* (1875), 79 Ill. 225, 228.) We hold that the trial court properly assumed jurisdiction over the cause to grant equitable relief.

## II

■ Phoenix Bond next claims that the trial court lacked jurisdiction over the matter because the hospital's redemption rendered the cause moot. The function of courts is to decide controverted issues in adversary proceedings. Illinois courts do not ordinarily entertain moot cases that do not present live issues. A question is moot when it presents no actual controversy, interests, or rights, or where the issues have ceased to exist. *Hill v. Murphy* (1973), 14 Ill. App. 3d 668, 670, 303 N.E.2d 208, 209-10.

■ Phoenix Bond invokes the voluntary payment doctrine in support of its mootness claim. The doctrine is simply that money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back on the sole ground that the claim was illegal. (*Illinois Glass Co. v. Chicago Telephone Co.* (1908), 234 Ill. 535, 541, 85 N.E. 200, 201.) The rule applies to the payment of taxes, including property taxes. (See, *e.g.*, *Burley v. Lindheimer* (1937), 367 Ill. 425, 11 N.E.2d 926.) Phoenix Bond contends that the hospital's redemption of the property was a voluntary payment, which it cannot recover.

■ A prerequisite to the application of the voluntary payment doctrine is voluntariness. Conversely, compulsion precludes the application of the doctrine. (*Isenstein v. Rosewell* (1985), 106 Ill. 2d 301, 309, 478 N.E.2d 330, 334-35.) To recover a payment, one must show not only that the claim asserted was illegal, but also that a necessity existed that amounted to compulsion, and that the payment was made under the influence of such compulsion. *Illinois Glass Co. v. Chicago Telephone Co.* (1908), 234 Ill. 535, 541, 85 N.E. 200, 201.

To render a payment compulsory, such pressure must be brought to bear on the payor as to interfere with his rights to person or property, and the compulsion must furnish the motive for the payment. (234 Ill. at 543, 85 N.E. at 201.) There must be some actual or threatened power wielded over the payor from which he has no immediate relief except payment. (*Bank & Trust Co. v. Cullerton* (1975), 25 Ill. App. 3d 721, 726, 324 N.E.2d 29, 33-34.) Ordinarily, protest is the best evidence of compulsion. The protest may either be express, or

appear from the circumstances. *Illinois Glass Co.*, 234 Ill. at 545, 85 N.E. at 202.

■■ Phoenix Bond contends that this case lacks the element of compulsion. Phoenix Bond argues that a certain level of compulsion is inherent in the tax sale process. Indeed, the purpose of the tax sale is to coerce negligent and unwilling landowners to pay their taxes. *City of Chicago v. City Realty Exchange, Inc.* (1970), 127 Ill. App. 2d 185, 189-90, 262 N.E.2d 230, 232.

After reviewing the record, we conclude that the hospital was compelled to redeem its property; the voluntary payment doctrine is, therefore, inapplicable. The record before us is replete with evidence and allegations of the hospital's protest. First and perhaps most important, the hospital did, in fact, pay the back taxes, as recalculated in the certificates of error. This operated as a protest and objection to the tax sale. Nevertheless, the taxing officials auctioned the hospital's taxes. Despite the collector's assurances to the contrary, Phoenix Bond received a certificate of purchase for the sale.

Despite the collector's vacatur of tax sale proceeding, the hospital actually suffered the imposition of penalty interest. Additionally, the hospital was threatened with an imminent and substantial increase in interest, or worse, the loss of its property. These sanctions, those actually imposed and those threatened, were real and immediate. Despite the hospital's continued protests, it finally had no immediate relief except redemption. Further, the hospital brought this action seeking relief the very next day. These facts constitute overwhelming evidence of protest, which is the best evidence of compulsion. We hold that the voluntary payment doctrine does not apply to the facts of this case; consequently, the cause is not moot.

### III

We have concluded that: (1) the trial court properly assumed jurisdiction over the cause to grant equitable relief; and (2) the cause is not moot. We now briefly address, *sua sponte*, the propriety of the TRO itself.

■■■ A TRO allows the trial court to preserve the status quo until it can hold a hearing to determine whether it should grant a preliminary injunction. A trial court should not refuse a TRO merely because the court may not be absolutely certain the plaintiff has the right that he claims. The plaintiff is not required to present a case that would entitle him to judgment at trial. Rather, he need show only that he raises a fair question about the existence of his right and that the court should preserve the status quo until it can decide the cause on

its merits. Further, the granting or denial of a TRO is within the sound discretion of the trial court. *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1983), 94 Ill. 2d 535, 541-42, 447 N.E.2d 288, 291 (and cases cited therein).

 ▄▄▄ In the case at bar, the trial court held a hearing the day that the hospital filed its complaint. The hospital, the taxing officials represented by the State's Attorney, and Phoenix Bond were all present. The court granted the TRO only after hearing argument from all of the parties and reviewing the pertinent documents. After reviewing the record, we hold that the trial court did not abuse its discretion in issuing the TRO.

For the foregoing reasons, the order of the circuit court of Cook County issuing the temporary restraining order is affirmed in all respects and the cause remanded to the trial court for further proceedings.

Affirmed and remanded.

JOHNSON and McMORROW, JJ., concur.