TERRA-NOVA INVESTMENTS, Indiv. and as a Representative of a Class of Persons Similarly Situated, Plaintiff-Appellant, v. EDWARD J. ROSE-WELL, County Treasurer of Cook County, *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—91—0281

Opinion filed September 16, 1992.

Arnold M. Flamm, of Orlikoff & Flamm, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Jeanette Sublett, Patricia M. Shymanski, and Patricia M. Moser, Assistant State's Attorneys, of counsel), for appellees.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff appeals from the dismissal of its complaint which challenges the constitutionality of a transfer provision in the Revenue Act which provides that fees in excess of $500,000 collected from taxbuyers for a sale in error fund shall be transferred to the general revenue fund (Ill. Rev. Stat. 1989, ch. 120, par. 741.1(g)).

This appeal raises five issues as to whether (1) plaintiff's cause of action constitutes a collateral attack on a prior judgment; (2) plaintiff's claim is barred by the voluntary payment doctrine; (3) plaintiff has standing to contest the constitutionality of the statute; (4) the complaint states a cause of action under article I, section 12, of the Illinois Constitution insuring access to justice (Ill. Const. 1970, art. I, §12); and (5) the challenged statute violates the due process and equal protection rights of the plaintiff class.

For the reasons which follow, we affirm the dismissal of plaintiff's complaint because, although it is not a collateral attack or barred by voluntary payment and plaintiff has standing, we find the statute constitutional.

■ The Revenue Act governs tax sales of property. For each parcel of property purchased at a scavenger tax sale in 1989, the taxbuyer was required to pay a $60 fee to the county collector. (Ill. Rev. Stat. 1989, ch. 120, par. 741.1(f).) The county collector then

deposits the money with the county treasurer, who maintains an interest-bearing fund used to satisfy the refund of interest and costs for tax sales in error. (Ill. Rev. Stat. 1989, ch. 120, par. 741.1(g).) Section 260.1(g) further provides that "[a]ny moneys accumulated in the fund by the county treasurer in excess of $500,000 shall be paid each year to the general fund of the county." Ill. Rev. Stat. 1989, ch. 120, par. 741.1(g).

Plaintiff challenges the constitutionality of the statutory scheme which provides that funds in excess of $500,000 pour over into the general corporate fund of the county.

Defendants filed a section 2—619.1 combined motion to dismiss relying on section 2—615(a) for failure to state a cause of action and section 2—619(4) for dismissal by reason of a prior judgment. Ill. Rev. Stat. 1989, ch. 110, pars. 2—619.1, 2—615(a), 2—619(4).

At a hearing held on December 20, 1990, the trial court offered plaintiff the opportunity to amend its complaint, but plaintiff declined and instead chose to stand on its complaint. The trial court then granted defendants' motion to dismiss based on its analysis of *Boynton v. Kusper* (1986), 112 Ill. 2d 356, 494 N.E.2d 135 (held unconstitutional the portion of the marriage license fee collected to fund domestic violence centers); *Crocker v. Finley* (1984), 99 Ill. 2d 444, 459 N.E.2d 1346 (held unconstitutional a $5 filing fee imposed on divorce petitioners to fund domestic violence shelters); and *Ali v. Danaher* (1970), 47 Ill. 2d 231, 265 N.E.2d 103 (upheld a $1 filing fee imposed on civil plaintiffs to fund the local county law library).

The threshold inquiry, raised by defendants, is whether plaintiff's cause of action is precluded under section 2—619(a)(4), which provides for involuntary dismissal where "the cause of action is barred by a prior judgment." (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(4).) The prior judgment relied on by defendants is the supplemental order entered by the circuit court on January 31, 1990, confirming the sales made in the collector's application proceeding.

Plaintiff contends that it is not bound by the supplemental order confirming the sale because it was not a party to that proceeding and it received no notice of the order's entry.

We find that plaintiff did not enjoy the status of a party at the sale confirmation proceeding and, thus, its complaint cannot be barred as an impermissible collateral attack on the sale confirmation order.

The present case involves sales of tax delinquent lands which are special statutory proceedings created by the Revenue Act. Sec-

tion 235a of the Revenue Act is commonly known as the Scavenger Act (*In re Application of Rosewell* (1987), 117 Ill. 2d 479, 481, 512 N.E.2d 1256) and authorizes the sale of certain tax delinquent land for bids which may be less than the full amount of money actually owed.

The Scavenger Act directs the county collector to institute a scavenger sale by applying to the court for judgment of sale. Upon application by the collector for judgment and order of sale, the court acquires *in rem* jurisdiction of the property and subject matter. (*In re Application of Cook County Treasurer* (1985), 135 Ill. App. 3d 901, 904, 482 N.E.2d 361.) The court retains jurisdiction throughout the proceedings to order the issuance of a tax deed. *In re Application of Cook County Treasurer*, 135 Ill. App. 3d at 907.

The designated lands are then sold at public sale to the highest bidder who must, among other things, then execute an application for certificate of purchase (Ill. Rev. Stat. 1989, ch. 120, par. 716b) and pay the statutorily designated sale in error fee (Ill. Rev. Stat. 1989, ch. 120, par. 741.1(f)). The Scavenger Act mandates that no sale of lands is final until confirmed by the court.

Accordingly, within 30 days after the court-ordered scavenger sale, the collector must file a report in the court with the results of the sales and the amount of the fees assessed against each bid. The court must approve the sales in a confirmation proceeding and a certificate of purchase is then issued to the highest bidder at the scavenger sale.

Next, at the expiration of the established redemption period, the owner of the certificate of purchase may petition the same circuit court where the judgment of sale was entered to issue a tax deed if the real estate is not redeemed. Ill. Rev. Stat. 1989, ch. 120, par. 747.

According to these statutorily prescribed procedures, we find that a scavenger sale participant who becomes the highest bidder and then seeks to obtain a certificate of purchase retains the status of a "bidder" until after the confirmation of sale when he acquires a certificate of purchase. In a case involving a tax sale, the Illinois Supreme Court characterized the taxbuyer as "only a bidder" until after the sale is held, the bid is accepted, and a certificate is issued. (*Thornton, Ltd. v. Rosewell* (1978), 72 Ill. 2d 399, 405, 381 N.E.2d 249.) The supreme court stated that "[a]s to this property, plaintiff was not yet the owner of the fee [citation], nor even a certificate holder, but only a bidder in the process of making a purchase." *Thornton*, 72 Ill. 2d at 405.

Similarly, in a tax deed proceeding following a scavenger sale, the City of Chicago redeemed the property. Thereafter, its petition to dismiss the tax deed proceeding was granted because it "could not be bound by the judgment and order of sale until it was made a party to the proceeding" and there was nothing to indicate that the City of Chicago was a party prior to the time it filed its petition to dismiss the petition for a tax deed. *In re Application of County Treasurer* (1972), 4 Ill. App. 3d 243, 248, 280 N.E.2d 761.

When the bidder-taxbuyer becomes the owner of a certificate of purchase following a confirmation of a scavenger sale and petitions for a tax deed, then the taxbuyer clearly acquires the status of a party in the proceedings. Until that time, the county collector, by statute, is the party named and held responsible for the scavenger sale proceedings.

A person or entity cannot be bound by a judgment in a proceeding in which it was not a party. *Shimkus v. Board of Review* (1983), 117 Ill. App. 3d 826, 830, 454 N.E.2d 36.

The integrity of our system requires that a judgment rendered by a court having jurisdiction of the parties and the subject matter is not open to contradiction or impeachment in any collateral action or proceeding, except for fraud in its procurement. Even if the judgment is voidable and is so illegal or defective that it would be set aside or annulled on a proper direct application, it is not subject to collateral attack so long as it stands unreversed and in force. *Buford v. Chief, Park District Police* (1960), 18 Ill. 2d 265, 271, 164 N.E.2d 57, 60; *Chicago Park District v. Kenroy, Inc.* (1978), 58 Ill. App. 3d 879, 890, 374 N.E.2d 670, *aff'd in part & rev'd in part on other grounds* (1980), 78 Ill. 2d 555, 402 N.E.2d 181; *Parker v. Board of Trustees* (1966), 74 Ill. App. 2d 467, 469, 220 N.E.2d 258.

Collateral attacks are improper where there is an identity of parties or their privies in the collateral action and in the earlier suit. See *Malone v. Cosentino* (1983), 99 Ill. 2d 29, 457 N.E.2d 395 (the class plaintiff could not bring his civil class action suit challenging the constitutionality of certain fines levied against him and the other class members for traffic violations); *Walker v. Cockrell* (1982), 110 Ill. App. 3d 562, 564, 442 N.E.2d 660 (a class action that was instituted by certain plaintiffs whose underlying cases were already decided and that alleged unconstitutionality of a statute authorizing the circuit court clerk to retain 10% of bail-bond deposits for costs is an improper collateral attack).

In addressing the issue of whether an action should be barred under collateral estoppel principles, the appellate court defined

"party" as "one who is named as such in the record and has been properly served with summons or has entered an appearance." *Collins v. St. Jude Temple No. 1* (1987), 157 Ill. App. 3d 708, 711, 510 N.E.2d 981.

In determining that an attorney for a party is not a "party," the appellate court adopted the following definition from American Jurisprudence, second edition: " 'In connection with judicial proceeding the term "parties" is a technical word which has a precise meaning in legal parlance. It designates the opposing litigants in a judicial proceeding—the persons seeking to establish a right and those upon whom it is sought to impose a corresponding duty or liability ***.' " *Evans v. Stoval* (1980), 83 Ill. App. 3d 257, 259-60, 403 N.E.2d 1321, quoting 59 Am. Jur. 2d *Parties* §7 (1971).

■ Defendants' reliance on *De Bruyn v. Elrod* (1981), 84 Ill. 2d 128, 418 N.E.2d 413, is misplaced because, unlike the present case, the parties precluded in *De Bruyn* were also parties to the earlier proceeding, *i.e.*, a mortgage foreclosure. The plaintiff in *De Bruyn* had been a judgment creditor in the earlier mortgage foreclosure. The statute then in effect designated judgment creditors as "nonrecord claimants" (Ill. Rev. Stat. 1969, ch. 95, par. 23.1), provided for the method of joinder of such nonrecord claimants (Ill. Rev. Stat. 1969, ch. 95, par. 23.3), for their manner of appearance and rights of redemption (Ill. Rev. Stat. 1969, ch. 95, par. 23.5). Accordingly, it seems clear that the status of a bidder at a tax sale is quite different than the status of a judgment creditor as a "party" in a mortgage foreclosure under the statute then in effect.

■ Second, defendants assert that plaintiff's claim for the creation of a protest fund is barred by the voluntary payment doctrine because plaintiff did not plead either payment under protest or allegations amounting to duress. We disagree.

In its complaint, plaintiff made the following allegation:

"Plaintiff paid said sum of $60 to said defendant under duress inasmuch as defendant would not have issued the certificate of purchase to him without such payment."

We find that this statement sufficiently alleges payment under duress.

We reject plaintiff's argument that this issue has been waived on the grounds that defendants failed to raise it in the trial court. The record reveals that defendants expressly raised the voluntary payment doctrine in their brief in opposition to plaintiff's motion for a preliminary injunction.

However, on its merits, defendants cannot prevail on this issue.

■ The voluntary payment doctrine provides that a payor may not recover fees voluntarily paid, even if the fees assessed or imposed were illegal, unless (1) the payor lacked knowledge of the facts upon which to protest the fees or taxes at the time payment was made, or (2) the payment was made under duress. *Geary v. Dominick's Finer Foods, Inc.* (1989), 129 Ill. 2d 389, 393, 544 N.E.2d 344.

■ The duress exception rests upon the critical factor that the payee must exert some actual or threatened power over the payor from which the payor has no immediate relief except by paying the tax. *Geary*, 129 Ill. 2d at 402, 544 N.E.2d 344.

Such duress was found by the supreme court in *De Bruyn* when the plaintiffs "were confronted with the choice of payment of the sheriff's fees or his refusal to effect the requested sale, execution or redemption." (*De Bruyn*, 84 Ill. 2d at 136.) The *De Bruyn* court relied on *Ross v. City of Geneva* (1978), 71 Ill. 2d 27, 373 N.E.2d 1342, where the plaintiff was held to have paid involuntarily a surcharge on his electric bill.

The present plaintiff was faced with the same choice as the plaintiffs in *De Bruyn* and is thus not barred from recovery under the voluntary payment doctrine since the facts constituted duress which left plaintiff little choice but to pay the fee.

■ Third, defendants contend that plaintiff lacks standing to question the validity of the contested statutory provision.

A court will consider a constitutional challenge to a statute by a party who is affected by the statute or aggrieved by its operation. (*McKenzie v. Johnson* (1983), 98 Ill. 2d 87, 92, 456 N.E.2d 73; *Mlade v. Finley* (1983), 112 Ill. App. 3d 914, 917, 445 N.E.2d 1240.) A person who pays the fee has a right to challenge the disposition of the fee.

In *McKenzie*, the plaintiff as a taxpaying property owner was held to have standing to challenge a statutory property tax exemption. The court reasoned that the plaintiff had alleged a sufficient stake or interest in the controversy by bringing himself within the ambit of a specific constitutional guarantee (Ill. Const. 1970, art. IX, §6) regarding property taxes and by claiming that his tax liability is generally affected by a statute which facially violates that guarantee. (*McKenzie*, 98 Ill. 2d at 93.) In *Mlade*, the plaintiffs who paid certain fees mandated by the clerks-of-court act had standing to challenge the constitutionality of the fees paid. *Mlade*, 112 Ill. App. 3d at 917.

In contrast, the plaintiffs in an action against insurance companies for fraud arising from the sale of certain underinsured motorist coverage did not have standing to sue where they had not purchased the insurance coverage in question. *Glazewski v. Coronet Insurance Co.* (1985), 108 Ill. 2d 243, 483 N.E.2d 1263.

Here taxbuyers alone are affected by the sale in error fund because it is the taxbuyer who pays the fee, is afforded relief from void tax sales, and has the right of refund (see *La Salle National Bank v. Hoffman* (1971), 1 Ill. App. 3d 470, 274 N.E.2d 640) and has standing to challenge the statutory scheme relating to fee proceeds.

■ Fourth, plaintiff asserts that its complaint states a cause of action under article I, section 12, of the Illinois Constitution which seeks to assure access to our courts and provides:

> "Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely, and promptly." Ill. Const. 1970, art. I, §12.

Plaintiff argues that the sale in error fee "appears" to be a fee or tax on litigation since it is a condition precedent for obtaining a certificate of purchase and, thus, the fee violates the constitutional right to obtain justice freely. Plaintiff admits that at the time a taxbuyer makes his purchase, he is not yet a litigant but merely a potential litigant who has a right to institute a legal action to obtain a tax deed if redemption from the scavenger sale is not made.

The constitutional guarantee to a right to a remedy and to obtain justice freely has been construed to apply to litigants, such as divorce petitioners (*Crocker*, 99 Ill. 2d 444, 459 N.E.2d 1346); parties filing tax objections (*Sanko v. Carlson* (1977), 69 Ill. 2d 246, 371 N.E.2d 613); plaintiffs in civil actions (*Ali*, 47 Ill. 2d 231, 265 N.E.2d 103); defendants obtaining release by paying bail (*Schilb v. Kuebel* (1970), 46 Ill. 2d 538, 264 N.E.2d 377); a party filing a jury demand (*People ex rel. Flanagan v. McDonough* (1962), 24 Ill. 2d 178, 180 N.E.2d 486); and civil litigants (*Wenger v. Finley* (1989), 185 Ill. App. 3d 907, 541 N.E.2d 1220).

In *Crocker*, the only case cited by plaintiff regarding this issue, the supreme court struck down a $5 court filing fee imposed on dissolution-of-marriage petitioners because the fees collected were to fund a general welfare program, *i.e.*, the Domestic Violence Shelter and Service Fund. The *Crocker* court held that the Illinois constitutional right to obtain justice freely inherently requires that court fil-

ing fees and taxes may be imposed only for purposes relating to the operation and maintenance of the courts. *Crocker*, 99 Ill. 2d at 454.

"The constitution does not guarantee to the citizen the right to *litigate* without expense." (Emphasis added.) (*Ali*, 47 Ill. 2d at 236; see also *Sanko*, 69 Ill. 2d 246, 371 N.E.2d 613.) Plaintiff acknowledges that it was not a party to the original tax sale case so that he was not seeking resort to the courts in the manner envisioned by article I, section 12, of the Illinois Constitution.

The sale in error fee was a condition precedent to receiving a certificate of purchase and the receipt of such certificate does not constitute obtaining justice within the meaning of the constitution. Accordingly, we find that plaintiff's complaint fails to state a cause of action under article I, section 12, of the Illinois Constitution.

Moreover, the Illinois Supreme Court has long rejected a taxpayer's argument that the payment of taxes prior to filing an objection compelled a taxpayer to purchase justice in contravention of the constitutional right to obtain justice freely. (*Lakefront Realty Corp. v. Lorenz* (1960), 19 Ill. 2d 415, 167 N.E.2d 236.) Relying on *Lakefront Realty*, we previously held that the mandatory prepayment provisions in the Revenue Act did not deprive a tax objector of its constitutional right to due process of law. (*In re Application of County Treasurer* (1976), 42 Ill. App. 3d 895, 356 N.E.2d 844.) Similarly, we believe that payment of the sale in error fee prior to filing an objection does not offend the constitution.

■ Lastly, plaintiff asserts that the provisions concerning the sale in error fund are unconstitutional to the extent that the statute authorizes the transfer of some money from the sale in error fund to the general county fund.

Section 260.1(g) provides:

> "Any moneys accumulated in the [sale in error] fund by the county treasurer in excess of $500,000 shall be paid each year to the general fund of the county, prior to the commencement of the annual tax sale." Ill. Rev. Stat. 1989, ch. 120, par. 741.1(g).

Plaintiff contends that the transfer provision violates both the due process and equal protection clauses of the constitution because the challenged fee is imposed on only a narrow class of persons, *i.e.*, taxbuyers, and all other classes of people, although they are equally eligible to receive the benefits of the county's general revenue fund, were not assessed the fee. Plaintiff's objection to the statute "is not that the excess collections go into the county's gen-

eral fund, but rather that those collections are imposed upon only a narrow class of persons."

Defendant responds that the challenged transfer provision withstands constitutional scrutiny because there is a reasonable relationship between the purpose of defraying the costs of administering the sale in error procedure and charging the cost to the taxbuyers, the only group of persons which benefits from the procedure.

*Crocker* (*Crocker*, 99 Ill. 2d 444, 459 N.E.2d 1346 (struck down provision allowing a portion of filing fees to domestic violence shelters)), *Boynton* (*Boynton*, 112 Ill. 2d 356, 494 N.E.2d 135 (struck down same scheme addressed in *Crocker*)), *Ali* (*Ali*, 47 Ill. 2d 231, 265 N.E.2d 103 (upheld law library fees)), and *Wenger* (*Wenger*, 185 Ill. App. 3d 907, 541 N.E.2d 1220 (upheld fees to support dispute resolution centers)) impose upon us a "rational-relation" test to determine whether reasonable means have been adopted to accomplish the public interest sought to be protected. These cases are of only passing interest to our analysis since it is clear that the fees imposed upon all taxbuyers have a clear and sufficient nexus with the sale in error refunds to some taxbuyers to withstand constitutional scrutiny.

Excess collections are transferred to the county's general corporate fund rather than to any specific earmarked fund. It is beyond dispute that the fees could have been imposed on taxbuyers and all of the funds deposited in the county's general fund and that the county would be liable for sales in error and other sums now required to be paid out of the sale in error fund under the present scheme. The fact that the tax was imposed upon a narrow class of persons would not have been cause for complaint in that regard since such a classification would have been reasonable.

Defendants correctly rely upon *Fried v. Danaher* (1970), 46 Ill. 2d 475, 263 N.E.2d 820, which upheld the constitutionality of a statute authorizing the court clerk to retain jury demand fees even though the services of a jury were not ultimately needed by the party making the jury demand and paying the fee. Although in that case no fund was established, the funds were paid to the court clerk and, we assume, were used for other administrative purposes in his office.

The transfer of money accumulated in one fund into a general revenue fund is generally within the province and authority of the legislature. While we hesitate to provide examples of this authority for fear that it will encourage more litigation, the Liquor Control Act provides that fees collected from the issuance of licenses are to

be paid into the Dram Shop Fund. (Ill. Rev. Stat. 1991, ch. 43, par. 118.) Excess money which accumulates in the Dram Shop Fund is then transferred into the General Revenue Fund. (Ill. Rev. Stat. 1991, ch. 127, par. 144.20.)[1] Additionally, the legislature has empowered the governor to transfer monies from any special fund in the State treasury to the general revenue fund "notwithstanding any limitation on the use of monies in the special fund." Ill. Rev. Stat. 1991, ch. 127, par. 141(d); see also Ill. Rev. Stat. 1991, ch. 127, par. 4351 *et seq.*

There is a strong presumption of constitutionality which accompanies the State's scheme of taxation which may be overcome only

---

[1]Excess money accumulated in special funds is routinely transferred into the General Revenue Fund by the legislature. The General Assembly recently enacted the Emergency Budget Act of Fiscal Year 1992 (Act) providing that excess revenues held in certain special funds should be transferred in the General Revenue Fund. (Pub. Act 87—838, eff. Jan. 24, 1992.) This Act amended the following statutes to authorize the transfer of designated monies into the General Revenue Fund: Illinois Pesticide Act (Ill. Rev. Stat. 1991, ch. 5, par. 822.1 (Pesticide Control Fund)); Illinois Horse Racing Act of 1975 (Ill. Rev. Stat. 1991, ch. 8, par. 37—32 (Illinois Race Track Improvement Fund)); Violent Crime Victims Assistance Act (Ill. Rev. Stat. 1991, ch. 70, par. 510 (Violent Crime Victims Assistance Fund)); Illinois Insurance Code (Ill. Rev. Stat. 1991, ch. 73, par. 1020.3 (Insurance Financial Regulation Fund) and par. 1065.56—1 (Insurance Producer Administration Fund)); Illinois Vehicle Code (Ill. Rev. Stat. 1991, ch. 95½, par. 18c—1601 (Transportation Regulatory Fund)); Cycle Rider Safety Training Act (Ill. Rev. Stat. 1991, ch. 95½, par. 806 (Cycle Rider Safety Training Fund)); Illinois Coal Technology Development Assistance Act (Ill. Rev. Stat. 1991, ch. 96½, par. 8204 (Coal Technology Development Assistance Fund)); Illinois Dental Practice Act (Ill. Rev. Stat. 1991, ch. 111, par. 2342 (Illinois State Dental Disciplinary Fund)); Illinois Nursing Act of 1987 (Ill. Rev. Stat. 1991, ch. 111, par. 3524 (Nursing Dedicated and Professional Fund)); Illinois Optometric Practice Act of 1987 (Ill. Rev. Stat. 1991, ch. 111, par. 3920 (Optometric Licensing and Disciplinary Committee Fund)); Pharmacy Practice Act of 1987 (Ill. Rev. Stat. 1991, ch. 111, par. 4147 (Illinois State Pharmacy Disciplinary Fund)); Medical Practice Act of 1987 (Ill. Rev. Stat. 1991, ch. 111, par. 4400—21 (Illinois State Medical Disciplinary Fund)); Podiatric Medical Practice Act of 1987 (Ill. Rev. Stat. 1991, ch. 111, par. 4819 (Illinois State Podiatric Disciplinary Fund)); Real Estate License Act (Ill. Rev. Stat. 1991, ch. 111, par. 5816 (Real Estate Research and Education Fund) and par. 5817 (Real Estate License Administration Fund)); Structural Engineering Licensing Act of 1989 (Ill. Rev. Stat. 1991, ch. 111, par. 6636 (Design Professionals Administration and Investigation Fund)); Radiation Protection Act of 1990 (Ill. Rev. Stat. 1991, ch. 111½, par. 210—35 (Radiation Protection Fund)); Environmental Protection Act (Ill. Rev. Stat. 1991, ch. 111½, par. 1022.8 (Environmental Protection Permit and Inspection Fund) and par. 1022.13 (Underground Storage Tank Fund)); Illinois Health Facilities Planning Act (Ill. Rev. Stat. 1991, ch. 111½, par. 1162 (Illinois Health Facilities Planning Fund)). Numerous other statutes were similarly amended in this Act to provide the transfer of funds into the General Revenue Fund.

by a clear showing that it is arbitrary and provides an unreasonable classification. (*Bernier v. Burris* (1986), 113 Ill. 2d 219, 227, 497 N.E.2d 763; *People ex rel. Kutner v. Cullerton* (1974), 58 Ill. 2d 266, 273, 319 N.E.2d 55.) Plaintiff's complaint does not overcome that presumption.

■■ In reviewing a dismissal order based on section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), this court must determine if the allegations in the complaint are sufficient to state a cause of action upon which relief may be granted. (*Aguilar v. Safeway Insurance Co.* (1991), 221 Ill. App. 3d 1095, 1100-01, 582 N.E.2d 1362.) Assuming all of plaintiff's allegations to be true and giving them every intendment, the statute would be constitutional, and thus, the trial court properly dismissed plaintiff's complaint for failure to state a cause of action.

Judgment affirmed.

RIZZI and TULLY, JJ., concur.