MARSHALL FIELD *et al.*

*v.*

ABRAHAM OPPENSTEIN *et al.*

*Filed at Ottawa November 17, 1880.*

1. CHANCERY—*relief refused when the proof is not satisfactory.* On creditor's bill to reach assets alleged to be in a party's hands to pay debts which such party claimed he had paid to the extent of all coming to him, denying the receipt of the greater amount charged, when the testimony was so irreconcilably conflicting as to make it impossible to arrive at the truth of the transaction, a decree dismissing the bill was affirmed.

2. COSTS—*in chancery—discretionary.* Under the statute, costs in chancery are in the discretion of the court trying the cause, and when that discretion is not abused the ruling below will not be reviewed.

APPEAL from the Appellate Court for the First District;— heard in that court on error to the Superior Court of Cook county; the Hon. S. M. MOORE, Judge, presiding.

Mr. WILLIAM B. BRADFORD, for the appellants.

Mr. ADOLPH MOSES, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The original bill in this case was brought by Field, Leiter & Co., against Abraham Oppenstein and a number of persons composing the firm of M. Harris & Bros. It is a creditors' bill, and alleges that complainants obtained a judgment against Oppenstein, the principal defendant, on the 9th day of May, 1876, for the sum of $622.56; that execution was duly issued on such judgment, and returned "no property found," and that the same remains in full force and unsatisfied; that the principal defendant being largely indebted to divers persons, did, on or about the month of October, 1873, give to and place in the hands of his co-defendants, Harris Bros., a large amount of personal property, consisting of dry goods, trimmings, dress goods, and other goods, of the value of $4000; promissory notes and bills of exchange amounting to the sum of $1700; cash to the amount of $3000; making in all, the sum of $8700; all of which was placed in the hands of his co-defendants by Oppenstein, to be by them distributed among his creditors, among whom were complainants. It is further alleged that Harris Bros., instead of paying the creditors of Oppenstein, fraudulently kept such personal property, and appropriated the same to their own use, and now hold the same, and the proceeds thereof, against equity and good conscience, and against the rights of complainants. Other matters as to the fraudulent acts of Oppenstein are set forth in the bill; but as no proof was offered as to them, it will not be necessary to notice such allegations.

On petition filed by William B. Bradford, a judgment creditor of Oppenstein in the sum of $1164.90, he was permitted by the court to become complainant, as was also Benjamin F. Allen, another judgment creditor of Oppenstein in the sum of $1867.10.

Answers were filed by the members of the firm of Harris Bros., denying all the allegations of the bill charging them with having effects of Oppenstein in their hands unaccounted

for; but the answer of Oppenstein admits most of the allegations of the bill, and particularly those in respect to Harris Bros. On the hearing in the Superior Court the bill was dismissed for want of equity, and that decree was affirmed in the Appellate Court, and now complainants bring the case to this court on appeal.

The evidence contained in this record has been examined with that care the importance of the case demands; and no reason is perceived for disturbing the decrees of the lower courts through which the case has come to this court. Oppenstein failed in business in the fall of 1873, and it was found he was indebted to sundry persons in a sum of about $14,000. Some understanding was had with most, if not all, of his creditors, by which they agreed to take a certain per cent in full satisfaction of their respective claims. That settlement was effected in consideration that Harris Bros. would indorse the paper of Oppenstein for a certain per cent of each creditor's claim, which they did, and afterwards paid. It was to secure Harris Bros., as indorsers on his composition paper, that Oppenstein placed effects in their hands. That Oppenstein placed some amount with Harris Bros. to secure them as his indorsers, and that Harris Bros. paid out an amount, as indorsers for Oppenstein, to his creditors, stands admitted; but the controversy hinges upon the amounts so paid to Harris Bros., and by them paid out to the creditors of the failing debtor.

Oppenstein was the principal witness offered by complainants to sustain the bill. His testimony is that he placed in the hands of Harris Bros. goods and money, as he expresses it, "in the neighborhood of $7000 or $8000"—enough, he says, to pay fifty per cent of his whole indebtedness, and after deducting what they have paid out to his creditors, which he states was "in the neighborhood of $2500," there now remains in their possession between $4000 and $5000, of which his creditors ought to have the benefit. On the

other hand, his co-defendants deny most positively that they ever received any merchandize from Oppenstein, and as positively state that they have paid out to his creditors all they ever received from him in money or other effects. They also give in evidence a release executed by Oppenstein, dated before this bill was filed, in which he releases "them from any and all claims, demands, and debts, of whatsoever nature, up to date."

There is some testimony, from disinterested witnesses, that tends, in a measure, to strengthen the testimony given by the respective parties; but, after all, the testimony is so irreconcilably conflicting it is impossible to arrive at the truth of the transaction. A number of witnesses state that Oppenstein's reputation for truth is so bad they would not believe him under oath. His account of his dealings with Harris Bros. is in many respects most unreasonable, and not at all calculated to impress the mind with its truthfulness. But, on the other hand, the explanations given by such members of the firm of Harris Bros. as were in position to know most concerning the transaction, is very far from being satisfactory. Their own version is, the business was conducted in a loose and careless manner, and no accurate accounts were kept by them. Neither party seems to have kept any books or memoranda relating to the business. Everything rested on the memory of the parties interested. After mature consideration, we think the decrees of the Superior and Appellate Courts are right. The evidence is too unsatisfactory to warrant any decree in favor of complainants.

Cross-errors were assigned in the Appellate Court that the Superior Court had refused to allow Harris Bros. their costs, and cross-errors as to that decision are insisted upon in this court. Under our statute, costs in chancery are in the discretion of the court trying the cause. No abuse of that discretion is apparent in this case. The defendants complaining of the decree in this respect are not altogether blameless in

the transaction, and under the circumstances the Superior Court could with great propriety refuse to allow them costs.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE CRAIG took no part in the decision of this case.