Samuel W. Fleisher et al., v. Pius P. Flick, Administrator et al.
Louis Samkovitz, Appellant, v. Katherine Levy Goldman et al., Appellees.

Gen. No. 43,382.

464

Opinion filed May 4, 1948. Rehearing denied May 18, 1948. Released for publication June 4, 1948.

BENJ. F. J. ODELL, of Chicago, for appellant.

ALBERT S. LONG, of Chicago, for appellees.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

On January 2, 1932, Samuel W. Fleisher filed a bill in the superior court of Cook county to foreclose a first mortgage on property located at 6906–12 Lakewood avenue, Chicago, Illinois, which is improved with a twenty-four apartment building. Said bill named, among others, as defendants, Katherine Levy Goldman, Ruth Levy Ettelson and Julia Levy Dry, the owners of the equity of redemption of the property, Louis Samkovitz and others, who held third and fourth mortgage notes delivered to them in 1916 to secure payment for labor and materials furnished by them for the construction of the building on the premises in question, and Frank C. Rathje, individually and as trustee. A receiver was appointed to manage the property and collect the rents therefrom. This foreclosure was a friendly proceeding, so far as it concerned the interests of Katherine Levy Goldman, Ruth Levy Ettelson and Julia Levy Dry, because Fleisher was procured to purchase the outstanding first mortgage bonds with $20,000 ostensibly loaned to him by

the husband of Katherine Levy Goldman. More than five and one-half years after the foreclosure suit was instituted, Fleisher voluntarily dismissed same on July 8, 1937, claiming that he had entered into an extension agreement with the owners of the equity of redemption for the payment of his first mortgage bonds, and the receiver was ordered to continue in possession of the premises. Shortly after said dismissal Samkovitz filed a petition on his own behalf and on behalf of certain other owners of third and fourth mortgage notes claiming the net rents which had accumulated in the hands of the receiver. Petitions were also filed by Katherine Levy Goldman, Ruth Levy Ettelson and Julia Levy Dry (hereinafter for convenience sometimes referred to as the Levy heirs) and Fleisher claiming said rents. The three petitions and the answers thereto were referred to a master in chancery, who, after protracted hearings, filed his report finding that the equities were with the Levy heirs and recommending that the receiver be directed to pay them the net rents which had accumulated in his hands. The chancellor entered a decree, which overruled all exceptions to the master's report, approved said report and directed the receiver to pay said rents, which then amounted to $29,068.64, to the Levy heirs. The decree also directed that the costs of the reference, amounting to $761.55, be paid by the Levy heirs. Samkovitz appeals from that portion of the decree awarding the Levy heirs the accumulated rents in the hands of the receiver. The Levy heirs have filed a cross-appeal from that portion of the decree taxing the costs of the reference against them. Fleisher filed a notice of appeal from the decree in the trial court but since he filed no appearance in this court, it must be considered that he has abandoned his appeal.

For a proper understanding of the claimed right of Samkovitz and the Levy heirs respectively to receive the rents involved herein it is necessary to set forth

the history of the litigation concerning the premises in question since 1916.

The property was vacant when Emanuel Levy and his wife, Sarah Levy, became the owners thereof in joint tenancy in 1915. In order to construct the apartment building on said property Levy and his wife made the following mortgages thereon:

| | |
|---|---|
| 1st mortgage, Heitman Bond & Mortgage Co | $55,000.00 |
| 2nd mortgage, F. B. Odell | 8,400.00 |
| 3rd mortgage, material supply companies | 3,968.47 |
| 4th mortgage, Samkovitz and other mechanics | 10,000.00 |

In each instance the property was conveyed by a trust deed to the Chicago Title & Trust Company as security for the mortgage indebtedness. All four trust deeds were recorded on January 10, 1916. To further secure the holders of the third and fourth mortgage notes Emanuel Levy and Sarah Levy conveyed the property by warranty deed on January 20, 1916 to Frank C. Rathje as trustee, subject to the aforesaid trust deed encumbrances. On the same day Rathje executed a declaration of trust which was agreed to and signed by Emanuel and Sarah Levy. Said declaration of trust provides in part as follows:

"Frank C. Rathje, Trustee . . . hereby declares that he holds the same [the property in question] upon the following trusts, that is to say, to hold the same in trust for the benefit of the said Emanuel Levy and Sarah Levy, his wife, and of the lawful owners of the notes described in the third and fourth trust deeds on said premises from the said Emanuel Levy and Sarah Levy, his wife, and to manage the building upon the said premises, to run the same and to collect the rents therefrom and apply the rentals, issues and income from the said building and premises" as thereinafter indicated. The declaration of trust went on to pro-

vide that rentals collected by the trustee should be applied first to pay taxes, expenses and the insurance on the said premises and then to the payment of interest and principal on the bonds and notes secured by the four mortgages in the order of their priority, the surplus, if any, "when all of these payments shall have been made," to be paid to Emanuel Levy.

Emanuel Levy died intestate on May 24, 1916, leaving him surviving his widow, Sarah Levy, and three daughters, hereinbefore referred to as the Levy heirs. On July 24, 1916, F. B. Odell filed a bill in the circuit court of Cook county to foreclose his second mortgage. A receiver was appointed July 26, 1916. The bill alleged that the heirs of Levy were unknown. The following persons, among others, were made parties defendant: Sarah Levy, "the unknown heirs and next of kin of Emanuel Levy, deceased," Frank C. Rathje, individually and as trustee, and the unknown owners and holders of the third and fourth mortgage notes. Thereafter, on complainant's motion, the bill was dismissed as to the unknown heirs and next of kin of Emanuel Levy and it was amended by adding the averment that the title to the mortgaged property had been held in joint tenancy by Emanuel Levy and Sarah Levy and therefore passed to Sarah Levy upon Emanuel Levy's death. On May 21, 1917, a decree of foreclosure was entered which directed the sale of the property subject to the first mortgage. Pursuant to a sale made by him on June 26, 1917, a master in chancery issued a certificate of sale to Orra W. Russell.

On April 22, 1918, almost ten months after the sale was had, Odell and Orra W. Russell filed a so-called supplemental bill alleging the filing of the original bill against Sarah Levy and the unknown heirs, the dismissal of the unknown heirs of Emanuel Levy and the subsequent proceedings resulting in the decree of foreclosure and the sale to Orra W. Russell. The supplemental bill also alleged that the three daughters of

Emanuel Levy (naming them) "were the heirs of Emanuel Levy." They were made parties to the supplemental bill and appeared and answered same. The prayer of the supplemental bill was that the Levy heirs should be bound by the decree entered in the original second mortgage foreclosure proceeding and that their right to redeem should be limited to the period of redemption fixed by the master in the sale made pursuant to said decree.

After a hearing on the supplemental bill, a decree was entered on July 26, 1918, finding that all of the material allegations therein were proved and ordering that the previous decree of sale in the original second mortgage foreclosure proceeding was binding on the Levy heirs, as though they had been made defendants in said proceeding, except that they should be given until October 31, 1918 or about three months to redeem from the sale in the original foreclosure proceeding.

A writ of error to review the decree entered on the supplemental bill was prosecuted to the Appellate Court, where said decree was affirmed (*Odell v. Levy,* 224 Ill. App. 345). The Supreme Court allowed the petition of the Levy heirs for certiorari to review the judgment of the Appellate Court. In *Odell v. Levy,* 307 Ill. 277, the Supreme court said at pp. 278, 280, 281 and 282:

"Other lienholders were made parties [to the original bill to foreclose] but their interests do not now require consideration. . . . The decree of foreclosure as to the plaintiffs in error [Levy heirs] was void. They were not parties to it. They were the equitable owners of the equity of redemption, and it is well settled that a decree of foreclosure in a proceeding to which the person having the equity of redemption is not a party is a nullity as to him. (*Rodman v. Quick,* 211 Ill. 546.) There was no authority for making them parties to the decree of foreclosure and binding them by the sale made under it by means of a

supplemental bill. . . . The purchaser at a fore-
closure sale upon a decree to which the owner of the
equity of redemption is not a party and which is there-
fore void as to him becomes the equitable assignee of
the mortgage and acquires the legal title to the land
which was in the mortgagee, but the right of the owner
of the equity of redemption to redeem will be unaf-
fected by the decree. (*Cutter v. Jones,* 52 Ill. 84; *Kel-
gour v. Wood,* 64 id. 345; *Alsup v. Stewart,* 194 id. 595;
*Rodman v. Quick, supra.*) If the supplemental bill can
be maintained as an adjunct or addition to the original
suit, it must be regarded, so far as the plaintiffs in
error are concerned, as an original suit, constituting,
together with the original bill, one case, which the
complainants were bound to prove in its entirety
against the defendants from the beginning. . . .
Their supplemental bill, if properly amended, may be
sustained as a bill seeking original relief by the fore-
closure of their mortgage, but as against the plaintiffs
in error the original decree can be given no effect
whatever.

"The judgment of the Appellate Court and the de-
cree on the supplemental bill will be reversed and the
cause remanded to the circuit court, with directions to
permit the complainants to amend their bill if they
ask leave to do so, and if they do not, to dismiss the
bill."

Upon the remandment of the cause to the circuit
court it was redocketed therein. On July 2, 1923, on
the motion of the Levy heirs and their mother, Judge
RYNER entered a decretal order which, after reciting
that it appeared "to the court that the complainants
do not intend to apply to the court for leave to amend
their said bill of complaint in accordance with the leave
therefor granted them by the said Supreme Court"
and after setting forth the mandate of the Supreme
Court which concluded with the direction to the cir-
cuit court "to permit the complainants to amend their

bill if they ask leave to do so, and if they do not, to dismiss the bill," directed "that the same be and is hereby dismissed out of this court."

On July 11, 1923, the Levy heirs filed a bill in the superior court to redeem from the second mortgage, as distinguished from the second mortgage foreclosure sale. In said bill they alleged that they owned the property as the heirs of their father, Emanuel Levy, subject to the dower of their mother. They set forth what occurred in the second mortgage foreclosure proceeding, including the sale of the property to Russell, and alleged that Odell, the complainant in the original bill to foreclose the second mortgage, and Russell were in possession of the property, except that H. F. Soden and Joseph E. Hesser claimed some interest therein by reason of an assignment to them by Russell of the certificate of sale. Their bill concluded with a prayer for the appointment of a receiver and for an accounting of the rents and that said rents be applied against the second mortgage. Odell, Russell, Soden, Hesser and the tenants of the building were made parties defendant. Soden and Hesser filed a joint and several answer in which they denied that the Levy heirs were entitled to any of the relief sought in their bill to redeem.

On July 19, 1924, a decree was entered allowing the Levy heirs to redeem from the second mortgage. Soden and Hesser appealed from this decree to the Appellate Court, where it was affirmed on June 22, 1925 (*Levy v. Odell et al.*, 237 Ill. App. 606). Certiorari was denied by the Supreme Court. Following the affirmance of said decree Soden and Hesser remained in possession of the property collecting the rents therefrom, while an accounting was being had before a master as to such rents and their application to the payment of the first and second mortgage indebtedness.

On June 22, 1927, while said accounting was still pending before the master, Pius P. Flick was appointed

administrator of the estate of Emanuel Levy upon the petition of Samkovitz. Claims were filed in said estate by the owners of the third and fourth mortgage notes. These claims were allowed by the probate court to the extent of $21,347.71.

Pursuant to a petition filed by the Levy heirs in the proceeding theretofore instituted by them to redeem from the second mortgage, Judge HEBEL entered an order on September 10, 1930, which directed that thereafter all rents from the property were to be paid to them; that all tenants in the building should attorn to them; and that the possession of the premises be forthwith surrendered to them; and that they have "the possession of said premises" until the further order of the court. As a result of the foregoing order the Levy heirs and their mother, Sarah Levy, assumed possession of the property. Sarah Levy died shortly thereafter on December 16, 1930. This brings us to the end of the litigation relating to the property involved herein preceding the first mortgage foreclosure proceeding instituted by Fleisher on January 2, 1932, the material facts concerning which were set forth at the outset of this opinion.

As has been seen, the subject matter of the instant litigation is the fund in the hands of the receiver appointed in the first mortgage foreclosure proceeding, which consists of accumulated net rents collected by him. The Levy heirs claim this fund as the owners of the equity of redemption of the property. The claim of Samkovitz to this fund is based on the proposition that the Rathje declaration of trust, executed in 1916, constituted an assignment of the rents from the premises for the benefit of the owners of the third and fourth mortgage notes.

We will first consider the question as to whether "the bill" dismissed by Judge RYNER after the remandment of the cause by the Supreme Court (*Odell v. Levy,* 307 Ill. 277) was the supplemental bill only or the entire second mortgage foreclosure proceedings.

Samkovitz (sometimes hereinafter for convenience re-
ferred to as the appellant) contends that "the second
mortgage foreclosure decree was vacated by the Su-
preme Court in *Odell v. Levy* (307 Ill. 277) for want
of indispensable defendants and that vacating voided
the whole proceeding in the absence of an amendment
of the bill. For want of amendment the bill and whole
proceedings became a nullity and everything then stood
as it did before the cause was instituted."

The contention of Samkovitz in this regard
does not merit serious consideration. It will be noted
from that portion of the opinion of the Supreme
Court, heretofore set forth, that the decree of fore-
closure entered upon the original bill was not "va-
cated" or reversed but was held to be void and a
nullity as to the Levy heirs, because "they were not
parties to it." The decree that was reversed was that
entered upon the supplemental bill. The bill which
the Supreme Court directed the trial court to dismiss,
if it was not amended upon remandment, was unques-
tionably the supplemental bill. That this is so, is
clearly indicated by the last sentence of the opinion of
the Supreme Court preceding its judgment order,
which reads as follows: "Their supplemental bill, if
properly amended, may be sustained as a bill seeking
original relief by the foreclosure of their mortgage,
but as against the plaintiffs in error the original de-
cree can be given no effect whatever." It necessarily
follows that the only bill Judge RYNER intended to dis-
miss or that he had authority to dismiss was the sup-
plemental bill and the effect of said dismissal was to
leave the original second mortgage foreclosure pro-
ceedings stand as they were before the supplemental
bill was filed. It will be noted, however, that the Su-
preme Court considered only the rights of the Levy
heirs as they were affected by the decrees entered on
both the original and the supplemental bills, since it
stated in its opinion that "other lienholders were

made parties [to the original bill] but their interests do not now require consideration.''

As heretofore shown, the owners of the third and fourth mortgage notes and Rathje as trustee under the declaration of trust for the benefit of the holders of said notes were made parties defendant in the original bill to foreclose the second mortgage and the next question to be considered is whether the decree of foreclosure entered on the original bill and the sale had thereunder extinguished the rights and interest of said included defendants under their third and fourth mortgages and the Rathje trust.

Appellant contends that ''on a bill to foreclose a mortgage, the mortgagor, unless he has conveyed the equity of redemption is an indispensable party'' and that ''if the mortgagor has died without transferring or devising the equity of redemption, the heirs are necessary parties and decree cannot be entered until they are before the court.''

 In support of this contention appellant cites *Lane v. Erskine,* 13 Ill. 501, and *Harvey v. Thornton,* 14 Ill. 217, where, as here, the mortgagor died without having transferred or devised his property and his heirs became the owners of the equity of redemption. In the *Lane* case the court said at pp. 503–4:

''On a bill to foreclose a mortgage, the mortgagor, unless he has assigned the equity of redemption, is an indispensable party. He has a direct interest in the account to be taken of what is due on the mortgage, for it fixes the amount of his indebtedness. And he is entitled to redeem the mortgaged premises on payment of the amount thus ascertained to be due. If he dies intestate, the estate descends to his heir burdened with the incumbrance. The heir has the same interest in stating the account, and the same right of redemption. It follows that he is a necessary party. It is accordingly well settled by the authorities, that, on a bill for the foreclosure of a mortgage, where the mortgagor

has died without transferring or devising the equity of redemption, the heir is a necessary party, and no decree can be entered until he is before the court. Story, Eq. P. sec. 196; Coote on Mortgages, 503; 4 Kent's Com. 185; *Fell v. Brown,* 2 Brown's C. R. 276; *Palk v. Clinton,* 12 Vesey, 48; *Farmer v. Curtis,* 2 Simons, 466; *Worthington v. Lee,* 2 Bland, 678; *Williamson v. Field,* 2 Sandf. C. R. 533.''

(The *Harvey* case is to the same effect.)

██ In so far as we have been able to ascertain, the law as enunciated in the foregoing decisions has not been overruled or modified and is squarely applicable to the situation presented here. The mortgagor, Emanuel Levy, having died without transferring or devising the property, his heirs were indispensable parties to the original second mortgage foreclosure proceeding and their omission as parties to said proceeding not only rendered the decree entered therein and the sale had thereunder void as to the Levy heirs but void as to the owners of the third and fourth mortgage notes and the Rathje trust. The Levy heirs not having been made parties and their father, the mortgagor, having died, the premises were not brought into said foreclosure proceeding at all and therefore, so far as the property itself was concerned, there was nothing to be bought or sold at the foreclosure sale. As was said in effect by the Supreme Court in *Odell v. Levy, supra,* the purchaser at the sale in the original second mortgage foreclosure proceeding merely became the equitable assignee of the mortgage.

██ Since nothing was purchased at the foreclosure sale except the second mortgage, the lien rights of the third and fourth mortgagees could not have been extinguished by the decree of foreclosure under which such sale was had, inasmuch as nothing was sold upon which said mortgagees could have exercised their right of redemption.

But it is insisted by the appellees that "the second mortgage foreclosure sale operated to divest Samkovitz et al. of all interest in the property since they were parties defendant in that proceeding, notwithstanding the non-joinder therein of the Levy heirs" and that "a decree is binding on parties in this case, though not binding on the owner of the equity of redemption because not joined." In support of the position of the Levy heirs in this regard, their counsel cites *Bigoness v. Hibbard,* 267 Ill. 301; *Scates v. King,* 110 Ill. 456; *Alsup v. Stewart,* 194 Ill. 595; *Walker v. Warner,* 179 Ill. 16; *Decker v. Patton,* 120 Ill. 464; *Taylor v. Adams,* 115 Ill. 570; *Kelgour v. Wood,* 64 Ill. 345; *Cutter v. Jones,* 52 Ill. 84; *Ohling v. Luitjens,* 32 Ill. 23; and *Bradley v. Snyder,* 14 Ill. 263.

All of these cases follow the familiar rule that where a mortgagee proceeds to foreclose without making a grantee of the mortgagor a party, such foreclosure proceeding will be valid and binding subject to the right of the grantee to redeem. This has always been the law in this State but it is not applicable where, as here, there is no grantee and the mortgagor died intestate, the equity of redemption descending to his heirs. We have examined all of the foregoing cases and every one of them involved a situation where the mortgagor transferred the equity of redemption to a grantee and, although the grantee was not made a party, the mortgagor was. These cases are readily distinguishable from the original second mortgage foreclosure in question here, where neither the mortgagor nor the owners of the equity of redemption were made parties.

Since all that passed to Odell under his second mortgage from Emanuel Levy was the equitable title of the latter, which was a naked redemption right, such naked redemption right was all that was received by the purchaser at the sale in the original second mortgage foreclosure proceeding. That being so, no right or interest in the property was sold at said

sale that would entitle the purchaser to a master's deed.

In our opinion the original second mortgage fore-closure suit was an abortive proceeding and the decree of foreclosure entered therein and the sale had there-under were wholly ineffective to extinguish the rights of the third and fourth mortgagees either under their mortgage liens or the lien of the Rathje trust.

Having determined that the rights of the third and fourth mortgagees under their mortgage liens and the lien of the Rathje trust were not extinguished by the decree entered in the original second mortgage foreclosure proceeding, there remains the question as to whether said mortgagees are entitled to the rents involved herein.

Appellant contends that, since the first and second mortgages were barred by the Statute of Limitations when he filed his petition claiming the rents, he and the other owners of the third and fourth mortgage notes are entitled to such rents under the Rathje trust, which constitutes an assignment of the rents from the premises for their benefit. The answer of the Levy heirs to this contention is that, even though the Rathje trust constitutes an assignment of the rents, the third and fourth mortgagees are not entitled to receive same, because their trustee, Rathje, had never taken possession of the premises or had a receiver appointed in an appropriate proceeding to collect the rents, and that they as the owners of the equity of redemption are clearly entitled to the rents in question.

Ordinarily rents and profits are incidents of the equity of redemption (*Williams v. Marmor*, 321 Ill. 283) and it has been repeatedly held that, if rents have been pledged in a mortgage as to which there is a subsequent default and the mortgagee does not go into possession or, having filed a bill to foreclose, does not have a receiver appointed, the owners of the equity of redemption will be entitled to retain possession of

the premises and to receive the rents, even after the sale and until the expiration of the period allowed for redemption from the sale. (*Davis v. Dale,* 150 Ill. 239, aff'g 51 Ill. App. 328; *Carroll v. Haigh,* 97 Ill. App. 576; *Cohn v. Franks,* 96 Ill. App. 206; and *Bartlett v. Amberg,* 92 Ill. App. 377.)

We think that the foregoing statement of law pertaining to an assignment of rents in a trust deed in the nature of a mortgage is applicable to the assignment of rents contained in the trust agreement here.

While the declaration of trust included an assignment of the rents by Emanuel Levy to Rathje as trustee, such assignment, in our opinion, was contingent upon Rathje taking possession of the property and collecting the rents therefrom in order to make them available for the benefit of the third and fourth mortgagees. As we construe the provisions of the trust agreement no right to the rents accrued to said mortgagees unless Rathje did take possession or unless he took some appropriate possessory action to sequester the rents for their benefit.

Much is said in appellant's brief concerning the continuous litigation involving the property since Emanuel Levy's death, which rendered it impossible for Rathje to take possession of the premises. While the fact that it was impossible for Rathje to take possession might well have a bearing on the question of laches if that question is raised in the event he attempts hereafter to take possession, it has no bearing on the terms of the declaration of trust and it certainly cannot change such terms.

Appellant seems to attach considerable significance to the fact that the first and second mortgages were barred by the Statute of Limitations when he filed his petition claiming the rents in question but, regardless of that fact, Rathje as trustee was still required under the law to take some appropriate possessory action to sequester the rents before he would be

entitled to them for the benefit of the third and fourth mortgagees.

It will be recalled that there was a receiver appointed in the first mortgage foreclosure proceeding, which was dismissed after it had been pending for more than five and one-half years. Yet no attempt was made during that period to have the receivership extended to the third and fourth mortgages. Appellant asserts that the extension of the receivership was not necessary "where the pledge of rents to trustee Rathje gave the same benefit." But the assignment of rents under the Rathje trust did not give "the same benefit," because such assignment could not be effectuated under the terms of the declaration of trust unless and until Rathje either took possession of the property himself and collected the rents or took some appropriate action to sequester them for the beneficiaries of the trust.

Since Rathje as trustee under the declaration of trust did not take possession of the property himself or take any appropriate possessory action to effectuate the assignment of rents, we are impelled to hold that such assignment was without legal effect, in so far as the rents in question are concerned. It necessarily follows that Rathje as trustee is not entitled to the rents involved herein for the benefit of the owners of the third and fourth mortgage notes and that the Levy heirs are entitled to receive said rents as the owners of the equity of redemption.

Numerous other grounds are urged both for the reversal and the affirmance of that portion of the decree awarding the rents to the Levy heirs. We have considered all of such grounds but in the view we take of this case, we do not deem it necessary to discuss them.

Under the cross-appeal it is contended that "the Chancellor erred in so much of the decree as taxed the costs against the Levy heirs and did not tax them

against Samkovitz et al. and Fleisher as the losing parties, and the decree should be reversed in that particular with an instruction to. tax the costs against the losing parties."

Section 18 of the Act on Costs (par. 18, chap. 33, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 107.055]) provides as follows:

"Upon the plaintiff dismissing his suit in equity, or the defendant dismissing the same for want of prosecution, the defendant shall recover against the plaintiff full costs; *and in all other cases in equity, not otherwise directed by law, it shall be in the discretion of the court to award costs or not;* and the payment of costs, when awarded, may be compelled by execution." (Italics ours.)

In *Merle v. Beifeld,* 275 Ill. 594, in construing this section of the statute, the court said at p. 628:

"Complaint is also made because the court taxed the costs of the proceeding to the defendants in error Joseph Beifeld and the hotel company. The allowance of costs in a chancery case rests very largely in the discretion of the chancellor. It will only be interfered with in cases of abuse in the exercise of such discretion. We think from an examination of the record in this case that the action of the chancellor in this respect was proper, and it is accordingly approved."

(To the same effect are *Askew v. Springer,* 111 Ill. 662, and *Marshall Field v. Oppenstein,* 98 Ill. 68.)

From an examination of the entire record in the instant case, we think that the action of the chancellor in taxing the costs of the reference against the Levy heirs was proper and it is therefore approved.

Two motions were heretofore made by the Levy heirs and reserved to hearing. The first of these motions suggested a diminution of the record and for leave to file same instanter and the second motion

asked that the appeal be dismissed or that *procedendo* be awarded. Both of these motions are at this time denied.

For the reasons stated herein the decree of the Superior court of Cook county is affirmed *in toto*.

*Affirmed in toto.*

FRIEND, P. J., and SCANLAN, J., concur.