ASSET GUARANTY REINSURANCE COMPANY, Plaintiff-Appellant, v. AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Trustee, *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—92—2482

Opinion filed September 28, 1993.

Winston & Strawn, of Chicago (James R. Vogler and Michael J. Stepek, of counsel), for appellant.

Sonnenschein, Nath & Rosenthal (Richard L. Fenton and Amy R. Small, of counsel), D'Ancona & Pflaum (James K. Merguerian, of counsel), Greenberger, Krauss & Tenenbaum, Chartered (Marvin A. Tenenbaum, of counsel), and O'Brien, O'Rourke, Hogan, McNulty & McCarthy (William T. Dwyer, Jr., of counsel), all of Chicago, for appellees.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court:

Plaintiff Asset Guaranty Reinsurance Company (Insurer) sued to foreclose on a mortgage. Shortly thereafter, Insurer moved to appoint a receiver. The trial court "entered and continued" the motion for 120 days. Insurer then directed tenants of the property to pay rents directly to its agents. The building owner, defendant Orleans-Institute

Place Associates (Orleans), sought emergency relief from the trial court. The trial court entered a second order directing tenants of the property to continue paying rent to Orleans' on-site manager. Insurer appeals.

We find that we have jurisdiction pursuant to Illinois Supreme Court Rule 307 (134 Ill. 2d R. 307) to review the trial court's interlocutory orders, which effectively granted Orleans a temporary restraining order and denied, for a substantial period, Insurer's motion to appoint a receiver. We find that because Insurer failed to plead or prove that it had made the payments required under the insurance policy, and such payments were necessary for it to have a right to foreclose on the mortgage, Insurer did not establish its right to possession. Thus, the trial court did not abuse its discretion by refusing to appoint a receiver or by directing the tenants of the property in question to continue paying rent to Orleans' management company.

Defendant American National Bank and Trust Company of Chicago, as trustee under trust number 66573 (Land Trustee), owned property for the benefit of Orleans. On October 15, 1990, the Illinois Development Financial Authority (IDFA) agreed to lend Orleans and Land Trustee the proceeds from the sale of bonds for use in a development project on the property. IDFA assigned its right to repayment to Security Pacific National Trust Company (New York) (Bond Trustee) as trustee of a trust for the benefit of bond purchasers. The loan agreement established that if Orleans defaulted on loan payments, "The [Bond] Trustee or [IDFA] *** may take whatever action at law or in equity may appear necessary or appropriate to collect all sums then due."

Bond Trustee obtained insurance for payment of Orleans' loan obligations from Insurer in exchange for premiums which Orleans agreed to pay and a reimbursement agreement from Orleans. Under the reimbursement agreement, Orleans agreed to pay Insurer a sum "equal to the aggregate of the amounts, if any, which shall have been paid at any time by the Insurer pursuant to the Policy" insuring repayment to Bond Trustee of Orleans' obligation.

As security for payments Orleans owed Bond Trustee under the loan agreement and "as security for the obligations of [Orleans] under that certain Reimbursement Agreement," Orleans and Land Trustee mortgaged the property and assigned the rents in favor of Bond Trustee and Insurer, as co-mortgagees and co-assignees. The mortgage established that if Orleans defaulted on the loan, co-mortgagees had the right to sue for foreclosure and "the court in which such complaint is filed may, upon application of the Mortgagees, *** appoint a

receiver." Mortgagees could also give "notice to any or all tenants *** directing the tenant to pay *** rents and profits to Mortgagees."

IDFA, Bond Trustee and Insurer signed an intercreditor agreement concerning the priority of their claims against Orleans. The agreement provided:

> "Unless an Insurer Default exists (as defined in the Indenture), the Insurer shall have the sole right *** to exercise any and all rights *** available to the holders of the Mortgage Documents ***. *** If an Insurer Default exists, the [Bond] Trustee shall have the sole right *** to exercise any and all rights *** available to the holders of the Mortgage Documents."

On May 13, 1992, Insurer filed this suit to foreclose the mortgage, naming only itself as plaintiff, and naming, as defendants, Land Trustee, Orleans, and 18 other parties, not including Bond Trustee or IDFA, whose rights of redemption it sought to bar. Insurer alleged that Orleans stopped paying its real estate taxes in September 1991 and ceased making other payments to Bond Trustee required by the loan beginning in February 1992. Although Insurer included most transaction documents as appendices to the complaint, it did not include the indenture between Insurer and Bond Trustee which defined "Insurer Default" for the intercreditor agreement. Insurer neither alleged nor attached exhibits showing that it had made any payments under the insurance policy.

On May 20, 1992, Insurer moved for appointment of a receiver. At the hearing on May 28, 1992, Insurer's attorney told the trial court, "the reason that we feel it is important to get relief today is that we are coming up on another set of rent payments which I presume will come in toward the first week of June." Defendants sought an opportunity to respond to the motion with briefs and affidavits.

The trial court pointed out that the record before it gave no information about the person named as receiver in Insurer's draft order. The trial court gave defendants 15 days to respond to the motion. Defendants supported their briefs in opposition to the motion with affidavits of a consultant to Orleans and a person involved in managing the property. The manager attested to the activities of the current management. The consultant said that the manager works on-site, and he said "a receivership would likely injure the building's ability to attract tenants and disrupt the ongoing leasing efforts currently in place, as well as jeopardize cur[r]ent rental income." Insurer submitted a reply memorandum supported by substantial information concerning the proposed receiver, and an article by two specialists in real

estate law concerning the Illinois Mortgage Foreclosure Law (Foreclosure Law) (Ill. Rev. Stat. 1991, ch. 110, par. 15—1101 *et seq.*; Bernard & Thorpe, *Recent Illinois Mortgage Law Changes Affecting Commercial Mortgage Lending*, 76 Ill. B.J. 606 (1988)). The authors of the article agreed that during receiverships, "[i]t becomes particularly difficult to make favorable leases and to make necessary expenditures for tenant improvements. Receiverships are also quite costly and cumbersome." 76 Ill. B.J. at 612-14.

At the hearing on June 17, 1992, Insurer argued that "[p]art of the security to support the payment of those bonds is this mortgage," so that the appointment of a receiver "is very important *** to the bondholders." The trial court took the matter under consideration, and on June 25, 1992, issued a "Memorandum of Opinion," holding:

"This matter comes on to be heard on Plaintiff's motion for appointment of receiver. Such a motion is in the court's discretion.

Inasmuch as there is an on-site management company already managing the property and that there is an extensive opposition to an appointment of a receiver, this matter is entered and continued for 120 days. At that time, the matter will be reevaluated."

Insurer then sent letters to the tenants of the property, directing them to pay rent to Insurer. On June 30, 1992, Orleans and Land Trustee filed an "Emergency Motion for Rule to Show Cause and Injunctive Relief," seeking an order directing tenants to continue paying rent to the present management. At the hearing held on the afternoon on which defendants filed the motion, Orleans argued that with its order of June 25, "the Court was preserving the status quo for 120 days and would at that point make another determination." Similarly, Orleans and Land Trustee stated in the motion that the "Court's June 25, 1992 order implicitly found sufficient 'good cause' to keep the owners in possession for at least the next 120 days."

Insurer argued that Orleans could not show the elements necessary to support issuance of a preliminary injunction. The trial court characterized the Insurer's position as: "If you won't do it my way, then I'll do it my way." The trial court said:

"I'm not entering a rule, I'm not having an injunction, but I want everything put back in the status quo, the way it was before the letter went out."

The trial court accordingly ordered the tenants to pay rent to the building manager, pending further order of the court. Insurer appeals

from both the "Memorandum of Opinion" dated June 25, 1992, and the order dated June 30, 1992.

Defendants argue first that this court lacks jurisdiction to hear the appeal. Supreme Court Rule 307(a) (134 Ill. 2d R. 307(a)) provides that this court has jurisdiction to hear an appeal from

> "an interlocutory order of court:
> (1) granting [or] *** refusing *** an injunction;
> (2) appointing or refusing to appoint a receiver."

This court looks to the substance, not the form, of a trial court's acts to determine whether this court has jurisdiction to hear an appeal pursuant to Rule 307. (*Lake Shore Racquet Club, Inc. v. Fireman's Fund Insurance Cos.* (1980), 91 Ill. App. 3d 1118, 1121, 415 N.E.2d 625.) Our supreme court has defined an "order" as "any direction of a court other than a judgment or decree made in a cause." *People v. Circuit Court* (1897), 169 Ill. 201, 215, 48 N.E. 717.

Insurer, in its motion for appointment of a receiver, emphasized its need for immediate relief. Insurer relied on section 15—1701(b)(2) of the Foreclosure Law, which provides, for mortgaged nonresidential property:

> "[I]f (i) the mortgagee is so authorized by the terms of the mortgage or other written instrument, and (ii) the court is satisfied that there is a reasonable probability that the mortgagee will prevail on a final hearing of the cause, the mortgagee shall upon request be placed in possession of the real estate, except that if the mortgagor shall object and show good cause, the court shall allow the mortgagor to remain in possession." Ill. Rev. Stat. 1991, ch. 110, par. 15—1701(b)(2).

The trial court stated in its memorandum of opinion, entered June 25, 1992, that the motion was "entered and continued for 120 days" in light of the presence of an on-site management company. As defendants conceded in the trial court, the memorandum effectively denied the request for immediate appointment of a receiver based on a finding of "good cause," within the meaning of the statute, to leave the current manager in possession for 120 days.

In *Oscar George Electric Co. v. Metropolitan Fair & Exposition Authority* (1982), 104 Ill. App. 3d 957, 433 N.E.2d 958, the plaintiff obtained a temporary restraining order (TRO) on May 12, 1981, and the next day the defendant filed an emergency motion to stay or dissolve the TRO. The trial court continued the motion to May 18, 1981, to allow plaintiff adequate time to respond. Defendant filed its notice of appeal on May 14, 1981, and the appellate court dismissed the appeal because the trial court's order to continue was not a ruling on

the motion, and the defendant had not "afforded the trial court the opportunity to rule on its motion." *Oscar George Electric Co.*, 104 Ill. App. 3d at 962.

Similarly, the court here on May 28, 1992, continued Insurer's motion for appointment of a receiver 15 days to allow defendants an opportunity to respond. Under *Oscar George Electric Co.*, Insurer could not appeal from the continuance granted on May 28. Insurer has not sought to appeal from that continuance; instead, it appeals from the action of June 25, when the trial court, after hearing argument and evidence and taking the matter under consideration for a week, decided to continue the matter for 120 days. This continuance was not designed to give the parties a further opportunity to better explain their positions. The trial court said that the matter would be "re-evaluated" in 120 days, implying that it had completed an evaluation and found sufficient grounds for not appointing a receiver, at least for 120 days. The trial court also noted that it had discretion over the motion, indicating that it granted the continuance as an exercise of that discretion.

Rule 307 is designed to permit interlocutory review of the trial court's exercise of its equitable powers to grant or deny relief including appointment of a receiver. (See *Board of Education of School District No. 122 v. Illinois State Board of Education* (1991), 209 Ill. App. 3d 542, 546, 568 N.E.2d 289.) The comments of the parties and the trial court indicate that the memorandum dated June 25, 1992, effectively determined that Insurer had no immediate right to a receiver on the basis of the evidence and the arguments, and disallowed any further action toward appointment of a receiver for four months. The trial court effectively stayed proceedings for a receivership, and generally, "an order ruling on the request for a stay of the trial court's proceedings has been considered the equivalent of the grant or denial of an injunction and, therefore, appealable." (*Chicago City Bank & Trust Co. v. Drake International, Inc.* (1991), 211 Ill. App. 3d 850, 854, 570 N.E.2d 765.) We find that we have jurisdiction to review the memorandum entered on June 25, 1992, as an order refusing to appoint a receiver within the meaning of Rule 307(a)(2).

■ A trial court's decision not to appoint a receiver should not be reversed unless it is found to be an abuse of discretion. (*De Kalb Bank v. Purdy* (1988), 166 Ill. App. 3d 709, 716, 520 N.E.2d 957.) However, the Foreclosure Law severely circumscribes the exercise of that discretion, as it directs the court to appoint a receiver whenever "a mortgagee entitled to possession so requests." (Ill. Rev. Stat. 1991, ch. 110, par. 15—1702(a).) Under section 15—1701(b)(2), if a mortgagee of nonresidential

property shows that (1) the mortgage and related written instruments entitle him to possession, and (2) there is a reasonable probability that the mortgagee will prevail at hearing, then the mortgagee is entitled to possession unless the mortgagor presents "good cause" to remain in possession.

■ Insurer here never showed that the documents entitle it to possession. The mortgage establishes that if Orleans defaults on payments due to Bond Trustee under the loan agreement, the co-mortgagees may take possession. The intercreditor agreement establishes that if Insurer has not defaulted on its obligations under the insurance policy, it has the sole right to exercise the remedies available under the mortgage. However, if Insurer has defaulted, as defined in the Indenture, the Bond Trustee has the "sole right *** to exercise any and all rights" under the mortgage, including the right to possession. Insurer has not joined Bond Trustee as a party to this action. Insurer has not appended the indenture to its pleadings or presented it to the trial court, so the court cannot determine whether Insurer has defaulted, and therefore the court cannot determine whether Bond Trustee, rather than Insurer, has the sole right to possession. Since the relief Insurer seeks would preclude Bond Trustee from exercising its rights under the intercreditor agreement and mortgage, the Bond Trustee is, on the face of these pleadings, a necessary party to this action, without whom the court cannot grant the requested relief. *People ex rel. Carson v. Mateyka* (1978), 57 Ill. App. 3d 991, 995, 373 N.E.2d 471.

Moreover, the mortgage to Insurer is security for payments required under the reimbursement agreement, which establishes that Orleans does not owe Insurer any money until Insurer makes payments to Bond Trustee under the insurance policy. Insurer has neither pled nor proved that Orleans has failed to make payments owed to Insurer under the reimbursement agreement. The intercreditor agreement provides that Insurer loses the right to possession if it defaults, presumably by failing to make payments required under the policy. We find no pleading and no evidence in this record that Insurer has made the required payments. If Insurer contends that the insurance policy is invalid, or if for any other reason it fails to make payments required by the insurance policy, Insurer has no rights to enforce under the mortgage, and Bond Trustee has the sole right to possession.

Nothing Insurer or counsel has said indicates that it has made the payments. On the contrary, Insurer's counsel stated at argument in the trial court that receivership is important to the bondholders. If Insurer intends to honor the policy, and it is not near insolvency, then the insurance policy provides complete protection for the interests of both Bond

Trustee and the bondholders. The mortgage will be important to Bond Trustee, and indirectly the bondholders, only if the insurance is not paid, presumably due to Insurer's default.

Since Insurer has not shown that it is entitled to possession, we need not address the argument that Orleans showed good cause to remain in possession. The trial court did not abuse its discretion by denying the motion for appointment of a receiver.

■ Defendants also argue that this court lacks jurisdiction to hear an appeal from the order dated June 30, 1992, which directs the tenants on the property to pay rent to the building manager, not to Insurer, pending further order of the court. The trial court stated that it was not entering an injunction, but it was restoring the status quo pending the court's determination of the rights of the parties.

> "A TRO allows the trial court to preserve the status quo until it can hold a hearing to determine whether it should grant a preliminary injunction." (*West Suburban Hospital Medical Center v. Hynes* (1988), 173 Ill. App. 3d 847, 856, 527 N.E.2d 1086.)

The trial court's order here had the effect of a TRO preventing Insurer from using the self-help remedy of directly collecting rents. Orders granting TROs are immediately appealable under Rule 307(a)(1). (*New Park Forest Associates II v. Rogers Enterprises, Inc.* (1990), 195 Ill. App. 3d 757, 760, 552 N.E.2d 1215.) Accordingly, we have jurisdiction to consider the appeal from the order dated June 30, 1992.

■ Insurer argues that the TRO is improper because it is not sufficiently specific and it does not include sufficient reasons for its issuance, as required by statute. (Ill. Rev. Stat. 1991, ch. 110, par. 11—101.) In *Brooks v. La Salle National Bank* (1973), 11 Ill. App. 3d 791, 298 N.E.2d 262, the defendant ousted the plaintiff from possession of property due to failure to pay rent, under a lease which provided for immediate repossession in the event of such a failure. The plaintiff sued for return of the premises, and the trial court granted the plaintiff a temporary injunction directing the defendant to return the property to the plaintiff "for good cause shown." (*Brooks*, 11 Ill. App. 3d at 800.) The defendant argued that the order did not meet the statutory requirement that the injunctive order state reasons for its issuance. Both the statute in *Brooks* and the statute applicable here provide that "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance." (Ill. Rev. Stat. 1969, ch. 69, par. 3—1; Ill. Rev. Stat. 1991, ch. 110, par. 11—101.) The court in *Brooks* held:

> "We find no merit in defendants' argument that the order was defective because it stated 'for good cause shown' and did not explicitly state the reasons for its issuance. The issues in the case

were clear enough so as to obviously apprise the defendants of the chancellor's reasoning in issuing the injunctional order. The order clearly and concisely advised the defendant of the ruling of the court and the precise conduct mandated, and otherwise complied with the requirements of the statute." *Brooks,* 11 Ill. App. 3d at 800.

The order here also comports with the statute. It specifies that the reason for its issuance is preservation of the status quo, and it specifically informs Insurer that it is not to attempt to collect rents directly from the tenants without a court order authorizing it to do so.

Finally, Insurer contends that the trial court abused its discretion by issuing the TRO.

"A trial court should not refuse a TRO merely because the court may not be absolutely certain the [party requesting it] has the right that he claims. [That party] is not required to present a case that would entitle him to judgment at trial. Rather, he need show only that he raises a fair question about the existence of his right and that the court should preserve the status quo until it can decide the cause on its merits. Further, the granting or denial of a TRO is within the sound discretion of the trial court." *Hynes,* 173 Ill. App. 3d at 856-57.

The trial court's order here is a proper exercise of its equitable power to preserve the status quo pending further hearings in this case. Orleans has shown a fair question about the right to possession, since Insurer has not pled facts sufficient to establish its right to possession. The trial court must preserve the status quo to protect Bond Trustee's rights at least until Insurer presents evidence that it had made the payments required under the insurance policy, which payments give Insurer, under the intercreditor agreement, sole right to pursue the remedies available under the mortgage and related documents. We find no abuse of discretion.

Because Insurer never pled nor proved that it paid any money under the insurance policy, and transaction documents show that it has no right either to possession of the property or to receipt of rents unless it makes such payments, the orders refusing to appoint a receiver for 120 days and directing tenants to pay rent to Orleans' manager are affirmed.

Affirmed.

SCARIANO and DiVITO, JJ., concur.