FIDELITY MUTUAL LIFE INSURANCE COMPANY, Plaintiff–Appellant,

v.

HARRIS TRUST AND SAVINGS BANK, not personally or individually but as Trustee under Trust Agreement dated 7/7/81 and known as Trust No. 41295; Kaiser Investments, an Illinois general partnership; et al., Defendants–Appellees.

No. 95–1884.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 29, 1995.

Decided Dec. 12, 1995.

Michael Weininger, Brian A. Bosch, Benjamin J. Randall (argued), Katz, Randall & Weinberg, Chicago, IL, for Plaintiff–Appellant.

Jay S. Geller (argued), Jerry L. Switzer, Jr., Donald I. Resnick, Jenner & Block, Chicago, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, and KANNE and DIANE P. WOOD, Circuit Judges.

POSNER, Chief Judge.

The appeal in this diversity suit presents issues of Illinois property and contract law. In 1986 the plaintiff, Fidelity, made a $3.6 million loan to an Illinois land trust that held title to a commercial property. The trustee was an Illinois bank, the beneficiary a partnership, Kaiser Investments. The loan was secured by a mortgage on the property, but in addition Kaiser Investments executed a

"Borrower's Affidavit" that contained a number of warranties and representations designed to induce Fidelity to make the loan. One of the paragraphs of the affidavit states that "notwithstanding anything to the contrary contained in the Loan Papers [the note, mortgage, loan agreement, etc.], ... Borrower [i.e., Kaiser Investments] shall be and remain personally obligated and liable for, and shall indemnify Lender against ... any rents or other income received by Borrower from the Property for any period subsequent to an event of default, and shall pay over the same to the Lender upon receipt, except to the extent that the same have been applied in payment of any amounts due Lender under the Note or other Loan Papers."

■ The trust defaulted on the loan in February 1993, and in July of that year, having sent a notice of default the preceding month, Fidelity brought this suit against the bank and Kaiser Investments (and also its partners, but we can ignore that detail). The suit asked for foreclosure and other relief, including the appointment of a receiver and indemnification for any rents collected after the default. The district court appointed a receiver in September, and the receiver then began collecting the rents. Later the court decreed foreclosure and the property was sold at a price that left Fidelity with a loss of more than $1.3 million on its loan. Between February 1993 and the appointment of the receiver in September, Kaiser Investments had collected almost $300,000 in rents and other income from the property. It refused to pay this money to Fidelity though required to do so by the Borrower's Affidavit. The judge held the refusal proper on the ground that the provision in the affidavit requiring the indemnification of rents before the appointment of the receiver was made unenforceable by the "rents and profits rule." This rule, which is a part of the common law of Illinois, forbids a mortgagee to enforce a provision of the mortgage assigning the rents or other income of the mortgaged property to him until the mortgagee takes possession of the property (presumably having bought in at the foreclosure sale) or a receiver is appointed to operate the property. *De Kalb Bank v. Purdy*, 166 Ill.App.3d 709, 117 Ill. Dec. 606, 610, 520 N.E.2d 957, 961 (1988); *In re Wheaton Oaks Office Partners Limited Partnership*, 27 F.3d 1234, 1241–42 (7th Cir. 1994). The judge therefore dismissed the claim against Kaiser Investments and since the other claims in the case had already been resolved, this dismissal was the final order in the case and is therefore appealable.

■ We do not think that the fact that the indemnity agreement in the borrower's affidavit was "separate" from the loan papers, or that the borrower, Kaiser Investments, was not technically the mortgagor, affects the applicability of the rents and profits rule. *Tepfer v. Deerfield Savings & Loan Ass'n*, 118 Ill.App.3d 77, 73 Ill.Dec. 579, 582, 454 N.E.2d 676, 679 (1983). The rule would be a joke if it could be avoided by designating certain papers involved in the loan the "loan papers" and reciting that the assignment of rents was not among them. It would also be a joke if, in a case such as this, that of an Illinois land trust, only the trustee was forbidden to make an enforceable assignment of rents. In an Illinois land trust—an exceedingly common mode of land ownership in Illinois, now spreading to other states, Henry W. Kenoe, *Kenoe on Land Trusts* § 1.19 (1989)—property that is subject to a mortgage is "owned" by a trustee whose only function is to hold title, leaving the management and control of the property entirely in the hands of the beneficiary of the trust. *People v. Chicago Title & Trust Co.*, 75 Ill.2d 479, 27 Ill.Dec. 476, 389 N.E.2d 540 (1979); *Progressive Land Developers, Inc. v. Exchange National Bank*, 266 Ill.App.3d 934, 204 Ill.Dec. 384, 388, 641 N.E.2d 608, 613 (1994); *Klebe v. Patel*, 247 Ill.App.3d 474, 186 Ill.Dec. 576, 578, 616 N.E.2d 1018, 1020 (1993). If the rents and profits rule were deemed applicable only to the trustee, the effect would be to leave the only entity that, because it operates the property and collects the rents, could make such an assignment—the beneficiary of the trust—free to do so, while the only entity forbidden to make an enforceable assignment of rents would be an entity that could not assign them anyway—the trustee—because it had no right to receive them.

■ Nevertheless the appeal must succeed, and for a simple reason. The indemnity agreement was not an assignment of rents. There *was* an assignment of rents, which was to take effect upon default. It was executed by the bank and by Kaiser Investments, and appears in the loan papers. It was unenforceable prior to the appointment of the receiver. Fidelity is not seeking to enforce it. It is seeking to enforce a separate agreement, the indemnity agreement, which provided that the rents collected by Kaiser Investments after a default occurred were to be paid over to the lender, Fidelity. An assignment would have required the tenants to pay Fidelity directly. The assignment provision in the mortgage, the provision that Fidelity is *not* seeking to enforce in this suit, is explicit in transferring "all right, title and interest" in the rents to Fidelity, permitting Kaiser Investments to "receive, *collect* and enjoy" the rents (emphasis added) only until Kaiser Investments defaults. The indemnity agreement required the landlord to remit to Fidelity the rents (more precisely, the dollar equivalent of the rents, for the agreement did not require Kaiser Investments to hand the checks and cash that it received from the tenants over to Fidelity) *after* the landlord had collected them from the tenants. The agreement was explicit about this; Kaiser Investments is to pay over the rents to Fidelity "upon receipt" of the rents by Kaiser Investments.

■ The distinction that we have been explicating is a fine one, but it is consistent with the purpose of the rents and profits rule, so far as we can reconstruct that purpose. The early English law, perhaps as a way of avoiding the Church's edict against charging interest, treated property used to secure a loan as if it were a hostage. Instead of placing his child in the custody of the lender as a guaranty of repayment, the borrower handed over his land—that is, actually transferred title—retaining a right to "repurchase" the land for a price that would equal the principal of the loan plus a "profit," in lieu of interest, for the lender. 1 Grant S. Nelson & Dale A. Whitman, *Real Estate Finance Law* § 4.1, p. 151 (3d ed. 1993); 12 *Thompson on Real Property* § 101.01(a), pp. 326–27 (David A. Thomas ed. 1994). If the borrower defaulted, therefore, he would not get the property back. Raymond J. Werner & Robert Kratovil, *Real Estate Law* § 20.02, p. 290 (10th ed. 1993). The problem with this method of securing loans was that, especially if the default occurred after most of the loan had been repaid, the value of the land given to secure the loan might greatly exceed the unpaid balance of the loan. The possibility of such forfeitures made borrowing an exceedingly risky business. Eventually the courts stepped in and decreed that when a lender "takes" land to ensure the repayment of a loan, he does not acquire title to the land, but only a security interest equal to what the borrower owes, an interest that shrinks, therefore, as the borrower repays. Robert Kratovil, "Mortgages—Problems in Possession, Rents, and Mortgage Liability," 11 *DePaul L.Rev.* 1, 4 (1961). A security interest is not only not title; it is not a possessory interest; and so it does not entitle the lender to receive the rent or other income that the property throws off. An assignment of rents to the lender would thus be inconsistent with the character of the lender's interest in the property generating the rents, as it would give the lender a right associated with ownership. (That at least is the view in "lien theory" states. In "title theory" states, which retain a residue of the original conception of a mortgage as a conveyance, the rents of a mortgaged property are considered an important part of the mortgagee's security. Kratovil, *supra*, at 4–5. Illinois, however, is a "lien theory" state. *Harms v. Sprague*, 105 Ill.2d 215, 85 Ill.Dec. 331, 334–35, 473 N.E.2d 930, 933–34 (1984).)

■ This, so far as we have been able to discover, is the entire origin and rationale of the rents and profits rule. See *Fleisher v. Flick*, 334 Ill.App. 461, 80 N.E.2d 81, 88 (1948). The rule, as it is explained in the cases and scholarly commentary, is of a technical or conceptual character rather than being a rule of natural justice that might radiate beyond its strict limits. The rule does not supply a reason for limiting the borrower's use of his rents once he receives them. One cannot even be sure whether the rule would forbid enforcing the mortgagor's agreeing to place a portion of the rents in

escrow (the type of "lockbox" arrangement that is common in commercial lending secured by personal rather than real property) to be available to the mortgagee in the event of a default, an issue on which we cannot find any cases.

We can *imagine* other, more substantive purposes of the rents and profits rule although we do not find them articulated in the cases. One would be to simplify life for the tenants by making it unequivocally clear to whom they must pay their rent, so that they are not subject to potential liability for paying the wrong person. Another would be to avoid a divorce between the duty to maintain the property, which is a duty of whoever is in possession, and the right to receive the rents that defray the cost of that maintenance, so that the property does not deteriorate because the landlord has no income out of which to pay that cost. The first purpose is consistent with the indemnity agreement challenged in this case. The agreement allows the borrower to continue collecting the rents after the default triggers the duty to indemnify. The second purpose could be jeopardized if the term "rents or other income" were interpreted to mean gross rather than net income, which indeed is the interpretation that Fidelity wants to impress upon it. The note that the mortgage secured was nonrecourse, meaning that the borrower would not be liable for a deficiency judgment if (as occurred) the sale of the property yielded, after payment of all expenses, a sum less than the unpaid balance of Fidelity's loan. If the gross rents after default had to be paid over to Fidelity, then unless they were expected to exceed both the amount by which the market value of the property fell short of the unpaid balance of the loan and the expenses incurred by Kaiser Investments to generate the rents, Kaiser Investments would be better off abandoning the property. Suppose it foresaw that the sale of the property would result in a shortfall of $1.3 million on the loan. Then it would gain nothing by collecting $300,000 in rents and giving them to Fidelity. Suppose the expenses of generating those rents would be $200,000. If Kaiser Investments incurred those expenses, it would be worse off to the tune of $200,000.

We very much doubt that this result was intended. After all, had Fidelity not been prevented by the rents and profits rule from obtaining an assignment of the rents immediately upon default and thus without waiting for the appointment of a receiver, it would have had to meet the running expenses of the property in order to collect the rents. The effect of the indemnity agreement was to appoint Kaiser Investments as Fidelity's agent for running the property and collecting the rents, and the agent would be expected to deduct his expenses. The more plausible interpretation of the agreement therefore is that it required Kaiser Investments to remit merely the net rents to Fidelity.

But this is an issue to be determined on remand. For however it is resolved it would not convert the indemnity agreement into an assignment of rents. An assignment has a precise meaning in law; and the indemnity agreement is not so offensive—probably it is not offensive at all—to the purpose of the rents and profits rule, which limits assignability, as to be unenforceable as contrary to the public policy of Illinois. Since the indemnity agreement does not purport to create a secured interest, it cannot interfere with the rights of any other secured creditors of Kaiser Investments or interfere with a marshaling of Kaiser Investments' assets in the event of bankruptcy. And the extension of the rents and profits rule for which Kaiser Investments contends would have the untoward consequence of accelerating a mortgagee's efforts to foreclose upon the mortgaged property and to obtain the appointment of a receiver to collect the rents. Foreclosure and receivership are costly remedies and there is no public interest in encouraging mortgagees to seek them at the first hint of default. *Asset Guaranty Reinsurance Co. v. American National Bank & Trust Co.*, 254 Ill.App.3d 713, 194 Ill.Dec. 63, 66, 627 N.E.2d 179, 182 (1993); Frank C. Bernard & Gregory A. Thorpe, "Recent Mortgage Law Changes Affecting Commercial Mortgage Lending," 76 *Ill.Bar.J.* 606, 612–14 (1988).

To correct a misunderstanding that pervades Kaiser Investments' brief, we point out that the agreement presupposes a loss by Fidelity on the loan. The presupposition is

implicit but unmistakable, not only because of the use of the term "indemnify," which implies a loss, but also and more fundamentally because the context is that of a loan. Fidelity's interest in the rents is solely that of a creditor hoping to avert a loss. A creditor is entitled to only one satisfaction of his claim. *Emerson v. LaSalle National Bank,* 40 Ill.App.3d 794, 352 N.E.2d 45, 49 (1976).

The nonrecourse feature of the mortgage has a dual significance in this case. First it shows the importance and evidences the commercial reasonableness of the indemnity agreement. Fidelity could not look to the assets of Kaiser Investments or its partners (other than the mortgaged property itself) for repayment of the loan, and this made the rents an important potential source of repayment should Kaiser Investments' equity in the property prove to be worth less than the unpaid balance of the loan. Second, it shows that the indemnity agreement was in the nature of a guaranty, and there is no law against guaranteeing the repayment of a note secured by a mortgage. Cf. 735 ILCS 5/15–1204, 1501(b)(5), 1511. It is true that if the mortgagor—and for this purpose we may deem Kaiser Investments the mortgagor, though technically the bank was—promises to do more than make good the loss of the mortgagee, the effect is to change the mortgagee's security interest into something more, a form of equity interest. It is as if the mortgagor promised that in the event of default he would give the fee simple in the property to the mortgagee even if the value of the property was greater than the unpaid balance of the loan. That would violate the principle that the mortgagee's interest is a security interest, not ownership. The principle is not violated by a guaranty, such as we find here, that merely offers to indemnify the lender for the loss resulting from a default.

The judgment for Kaiser Investments is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.